UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
EUGENE OKOH,

                        Petitioner,

    -against-

UNITED STATES OF AMERICA,

                        Respondent.
----------------------------------------------------------------X


**PETITIONER EUGENE OKOH'S MEMORANDUM OF LAW**


                                                LAW OFFICE OF SAM A. SCHMIDT
                                                Attorney for Petitioner Eugene Okoh
                                                111 Broadway Suite 1305
                                                New York, New York 10006
                                                (212) 346-4666 (tel)
                                                (212) 346-4665 (fax)
                                                lawschmidt@aol.com

## INTRODUCTION

Petitioner Eugene Okoh seeks to withdraw a plea that he entered and vacate the subsequent judgment of conviction and sentence imposed by this Court because his plea was not the result of a knowingly and intelligently waiver of his constitutional rights thereby it violated the due process requirement of the Sixth Amendment. Prior to executing a plea agreement and pleading guilty to an offense that was an "aggravated felony" under immigration law because it involved fraud and the loss to the victims noted in the agreement was more than $10,000, Petitioner lawfully and properly applied for a received confirmation of his United States citizenship in the form of a United States passport. See Affidavit of Eugene Okoh A1-4.[1] As a result of Petitioner's belief that he was a United States citizen and the confirmation supplied by the United States Government, neither Petitioner nor his attorney discussed ramifications of the plea and conviction nor did they make any effort to negotiate a plea that would not result in a conviction of an aggravated felony nor challenge the amount of loss over $10,000. Thus, as a result of the conduct of the United States Government in confirming his citizenship by providing him with a passport, he did not know that the plea would lead to his automatic deportation from the United States where he has lived and worked since 1997. He is now subject to immigration proceedings that threaten to impose permanent deportation from the United States. A5-9. Because the United States Government misled Petitioner to believe that he was a United States citizen and such belief induced him to plead guilty to an offense with a factual concession of a loss that resulted in a conviction of an aggravated felony that has

---

[1] Accompanying the petition and memorandum of law is an appendix that include the relevant documents. All pages of the appendix will be noted as "A" followed by the page number.

rendered him liable to permanent deportation, Mr. Okoh seeks to withdraw his plea and vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, the federal habeas statute.

## STATEMENT OF FACTS

Petitioner appears to have permanent resident alien status in the United States.[2] Petitioner was born in Nigeria on August 21, 1983 to Iglatius and Obadan Okoh. A10. On August 26, 1996, his mother, Obadan, became an American citizen while Petitioner was residing in Nigeria. A11. In 1997, he entered the United States and remained without a valid visa or documentation. In March 2001, when Petitioner was seventeen (17) years old, he filed for an adjustment of status as being a minor child of an American citizen. While still seventeen (17) years old and awaiting for the adjustment of status, Petitioner received a temporary work permit. A12. He received his alien registration card soon after February 11, 2002. A12.

On November 4, 2005, Petitioner was arrested and charged with participating in a conspiracy to commit bank fraud. He was assigned an attorney, Frank Handelman, Esq., to represent him. On January 4, 2006, an Indictment was filed charging Petitioner with a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. A13-16.

Though Petitioner understood that he obtained United States citizenship derivatively as a result of his mother's citizenship, Petitioner contacted an immigration attorney to be sure. He was told that he did become a citizen derivatively and that he could apply for a certificate or passport as proof of his citizenship. Petitioner applied for such documentation, submitting his Nigerian birth certificate, his alien registration card and his mother's Certificate of

---

[2] Petitioner is challenging the determination of the Department of Homeland Security that he is not a citizen and is subject to deportation.

Naturalization. Petitioner received a United States Passport with the number 216311494 on or about February 2, 2006. A17-18.

Prior to receiving the passport, Petitioner had limited discussions with his assigned attorney relating to his options as to how to resolve his case. Petitioner understood that the choices were to go to trial or to plead guilty with or without cooperating. After receiving the passport and having no fear of immigration consequences, Petitioner's discussions with his attorney turned to limiting the period of incarceration to as little as possible. The result of these discussions was the receipt of a plea agreement in which the Guidelines range was 8-14 months and agreement that the loss was $38,500.00. A19-23.

Though Petitioner understood that the judge was not bound by the agreement nor the Guideline sentencing range, as a result of the discussions with his attorney, Petitioner believed that the plea agreement was the best way to limit the time he would have to serve in jail. Limiting jail time was more important than any issue relating to loss or restitution. Because Petitioner did not believe that he faced any problems with his status as an American citizen, he had little or no discussion with his attorney as to the loss amount that he would be legally responsible for.

On April 11, 2006, Petitioner entered a plea of guilty to the conspiracy to commit bank fraud. During the plea allocation, the district judge asked him if he was a citizen. Because he had received his passport as confirmation of his citizenship and there was no doubt in his mind, Mr. Okoh answered yes. A33. The district court then explained some of the civil rights, as a citizen, Mr. Okoh could lose as a result of his conviction. *Ibid*. There was no mention of the amount of loss resulting from the offense of conviction. A24-45.

At the July 27, 2006 sentencing hearing, the amount of restitution was not determined and was left to be determined at some future time. A51-52. Though Mr. Okoh's attorney objected to the amount of loss that was noted in the presentence report, he made no effort to argue that the loss was less than $10,000. Petitioner had no discussion with his attorney as to the significance of the determination of the loss as it related to his status in the United States.

On July 27, 2006, Petitioner was sentenced to four (4) months incarceration and three (3) years supervised release with four (4) months home confinement with restitution to be set at a later date. A56, A64-69. Petitioner surrendered to the Bureau of prisons on August 29, 2006. On September 11, 2006, an amended judgment of conviction was filed setting restitution in the amount of $32,512.40. A70-75.

Just prior to his scheduled release on December 29, 2007, an immigration hold was placed on him. Soon after that, Petitioner learned that the United States Department of State claimed that he received a passport in error and that he was not a United States citizen. A76-77. He also learned that the offense that he pled guilty to was an "aggravated felony" under immigration law because it involved fraud and the loss to the victims was more than $10,000.

Had Petitioner not received the United States passport that confirmed both his understanding and his immigration attorney's statement to him that Petitioner was a citizen, but instead was informed that the Department of State believed he was not a United States citizen, Petitioner would have discussed the effects of any conviction on his ability to remain in the United States. He would have learned that he would face deportation if he was convicted of an aggravated felony and that the offense Petitioner was charged with would be an aggravated felony if the loss to the victims was greater than $10,000 because it involved fraud.

Under these circumstances Petitioner would not have pled guilty and conceded that the loss was more than $10,000.  He understands that there were options available other than the plea agreement that he entered into.  These options included going to trial, negotiating an amount certain of loss less than $10,000, pleading guilty to an offense that was not an aggravated felony and even requesting consideration for a deferred prosecution.

Since Petitioner's attorney, the government prosecutor, the court and Petitioner believed that he was a United States citizen, Petitioner had no discussions with his attorney on the effect that a conviction would have on his status in the United States.  Petitioner also believes that his attorney had no discussions with the government attorney relating to Petitioner's immigration status during plea negotiations.

I. THE STANDARD FOR GRANTING A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2255

A. Mr. Okoh Satisfies The "In Custody" Requirement Of A Petitioner Seeking Habeas Relief

It is well established that the federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are "in custody" in violation of the Constitution or law or treaties of the United States.  See Maleng v. Cook, 490 U.S. 488, 490 (1989).  Furthermore, petitioners seeking relief under the federal habeas statute must be "in custody" under the conviction or sentence that they challenge at the time the petition is filed.  Id. at 490-91.  Included within the term "in custody" are those petitioners who are no longer physically confined in a prison but who are nevertheless still subject to a sentence by being on parole or supervised release.  Id. at 491; see also Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994) ("the habeas corpus statute confers jurisdiction to district courts to entertain

habeas petitions for relief solely from persons who satisfy the status or conditions of being 'in custody' at the time the petition is filed, and a petitioner under supervised release may be considered 'in custody'"). Because Mr. Okoh is presently serving a three-year term of supervised release for the conviction he challenges he is still "in custody" as that term has been interpreted for the purposes of applying 28 U.S.C. § 2255.

  **B. Mr. Okoh Is Not Precluded From Seeking Habeas Relief As Sought As A Collateral Challenge Rather Than A Direct Appeal**

  Mr. Okoh did not raise the claim that he was mislead and induced by conduct of the United States Government into waiving his constitutional rights and entering a plea of guilty upon direct appeal; he does not seek, however, to use this habeas petition as a substitute for a direct appeal of that issue.

  It is well established that a motion under 28 U.S.C. § 2255 may not be used as a mechanism to pursue a claim that could have been addressed by direct appeal. See Zhang v. United States, 401 F. Supp. 2d 233, 237 (E.D.N.Y. 2005) (quoting United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998)). If a petitioner seeks to pursue a claim that was not pursued upon direct appeal, he must show either: (1) that there was "cause" for the waiver and he was "actually prejudiced" by the alleged violation; or (2) he is actually innocent. Id. Similarly to the determination that the traditional procedural default arising from a petitioner failing to raise an issue on direct appeal does not apply to an ineffective assistance of counsel claim such, the claim here, misrepresentation and improper inducement by the Government to waive his constitutional rights and plead guilty, requires a collateral challenge in order to develop a factual record. As with ineffective assistance claims, the record for an appeal in the instant claim is devoid of the

factual basis of the claim.  See Zhang, 401 F. Supp. 2d at 237.  See also United States v. White, 366 F.3d 291 (4th Circuit 2004).

     Mr. Okoh satisfies the "cause" requirement for waiving his claim on direct appeal.  First, as noted in his affidavit,  Mr. Okoh was not aware that the Departments of State and Homeland Security would claim that United States passport was issued in error.  In fact, Petitioner not only sought assurances from an attorney whose expertise was in immigration law, he sought confirmation from the source, the United States Department of State.  Mr. Okoh filed all of the documents he was supposed to file, did not hide any information, and waited patiently until he received confirmation of his citizenship from the United States Government.

     Second, Mr. Okoh had agreed not to file an appeal "or otherwise challenge" his conviction or sentence should the Court impose a sentence of fourtheen (14) months or less, as was the case here where the Court imposed a sentence of four months.   A21-22.

     Mr. Okoh also satisfies the "prejudice" requirement for waiving his claim because the misrepresentation and fraudulent inducement as to his status as a citizen caused him not to consult with his attorney with respect to the deportation consequences of taking a plea, was completely unaware that there were any residency or immigration consequences of the plea, and caused his attorney not to seek a different agreement or forcefully challenge the findings of the loss to the victims thus leading him to take a plea that resulted in a conviction of an aggravated felony.  The combination of these events has rendered him subject to deportation when it was clear that  staying in the United States where his family resides and is gainfully employed was of utmost importance to him.  See Zhang 401 F. Supp.2d at 237-38 (citing cases where "prejudice" was shown where defendant was not counseled regarding the deportation consequences of taking a plea).

Should the government argue that Mr. Okoh waived his right to attack collaterally his conviction and/or sentence in his plea agreement, that argument should be rejected as "a waiver of appellate or collateral attack rights [in a plea agreement] does not foreclose an attack on the validity of the process by which the waiver has been produced." Id. at 238. Since Mr. Okoh claims that it was the misrepresentations and false inducement by the United States Government that caused him to accept a plea that would have unanticipated and direly adverse consequences, the waiver cannot stand.

Finally, Mr. Okoh filed for habeas relief within the one-year period of limitations defined by statute. See 28 U.S.C. § 2255. These papers were filed with the Court well within the one-year period of limitations that began to run on the date his conviction became final, September 11, 2006, based upon the filing of the amended judgment. A70-75.

## II. PETITIONER'S CLAIM THAT HIS PLEA WAS INDUCED AS A RESULT OF GOVERNMENT MISREPRESENTATION AND ERROR WARRANTS RELIEF PURSUANT TO 28 U.S.C. §2255

Most cases that seek the relief sought here, withdrawal of the plea and vacating the conviction, are the result of defense counsel's misstatements or misrepresentations of the immigration effects of the conviction. The basis of those applications are the ineffectiveness of counsel. See e.g. United States v. Cuoto, 311 F.3d 179 (2d Cir. 2002); United States v. Kwan, 407 F.3d at 1005 (9th Cir. 2005); Zhang, 401 F.Supp.2d 233. The instant case relies on the admitted error and misrepresentation of at least one agency of the United States Government[3] that Mr. Okoh was a United States citizen, thus, he would not face any repercussions to his

---

[3] Counsel understands that while the Department of State issues passports and determines citizenship, it is Homeland Security and Justice that are responsible for the investigation of such applicants.

residence here. Similarly to the ineffectiveness of counsel claims, Petitioner's waiver of his constitutional rights and his plea were induced by false and incorrect representations.

Inducement to waive one's constitutional rights and plead guilty as a result of Government conduct are also held to the same requirement of being accurate when determining whether the induced plea resulted in a knowing and voluntary.

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

Brady v. United States, 397 U.S. 742, 755 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)(quoting Shelton v. United States, 246 F.2d 571, 572, n. 2 (CA5 1957) (en banc) (in turn quoting 242 F.2d 101, 115 (Tuttle, J., dissenting to panel opinion)), rev'd on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958).

In Santobello v. New York, 404 U.S. 257, 92 S.Ct 495 (1971), the Supreme Court acknowledged that when a plea was induced by a promise or agreement of the Government, or even if such promise was only a consideration in a defendant's determination to waive his constitutional rights and enter a plea of guilty, "such promise must be fulfilled." Id. 92 S.Ct. at 262. It makes no difference whether the error, or as in Santobello, a breach of the plea agreement, was inadvertent or intentional. As the Court noted, "[t]he staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done." Ibid.

As the Court in United States v. Reyes, 313 F.3d 1152 (9th Cir. 2002) reiterated, "in order to waive the right to withdraw a plea under Rule 11(e)(4), the waiver must be knowing and

9

voluntary," citing United States v. Davis, 121 F.3d 335, 337-38 (7th Cir.1997) (applying the waiver requirements of Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), to a defendant's waiver of the right to withdraw his plea). A defendant can be bound by his plea only if the plea was knowingly and intelligently made. Couto, 311 F.3d at 187. Even when the trial court adheres to all of the requirements of Rule 11, there is no guarantee that the plea was constitutionally valid. Ibid., citing Fontaine v. United States, 411 U.S. 213, 93 S.Ct. 1461 (1973). There was no knowing and voluntary waiver in this case.

In 1996, ten years ago, Congress enacted harsh amendments to the immigration laws, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), both of which eliminated any hope of discretionary relief from deportation for a non-citizen convicted of an "aggravated felony."[4] Since these amendments, "criminal defense attorneys have become increasingly . . . aware of their need to stay abreast of immigration law." People v. Sandoval, 73 Cal. App.4th 404; 86 Cal.Rptr.2d 431 (Ct. App. Ca. 1999). Given the elimination of most discretionary deportation relief mechanisms in the immigration code, there is now universal agreement in the defense bar that counsel should strive to provide accurate information to non-citizen clients about the deportation consequences of convictions arising from guilty pleas. See ABA Standards for Criminal Justice, Pleas of

---

[4] The AEDPA rendered defendants convicted of an "aggravated felony" ineligible for deportation relief under Immigration and Nationality Act (INA) Section 212(c), which had previously offered long-term permanent resident aliens a chance to avoid deportation. Pub. L. No. 104-132, § 440 (d), 110 Stat. 1214 (1996). Subsequently, the IIRIRA wholly repealed INA Section 212(c). Pub. L. 104-208, § 304(b), 110 Stat. 3009 (1996). It is noteworthy that an aggravated felony is a term of art under the immigration code that can even include misdemeanor convictions. See e.g., United States v. Graham, 927 F.Supp. 619 (W.D.N.Y. 1996) (New York misdemeanor of criminal sale of marijuana in the fourth degree is an aggravated felony).

Guilty, 14-3.2 (commentary); NLADA Performance Guidelines for Criminal Defense Representation, 6.2 (a) (3), 6.(3) (a); Vargas, Representing Noncitizen Criminal Defendants in New York State (NYSDA 1998, 2001)[5], see also Darby & Darby, P.C. v. VSI Int'l, Inc., 95 N.Y.2d 308, 314 (2000) ("attorneys should familiarize themselves with current legal developments so that they can make informed judgments and effectively counsel their clients"). Indeed, these drastic changes in the immigration code have led the Second Circuit to openly question whether standards of representation may have now "evolved to the point that a [defense lawyer's] failure to inform a defendant of the deportation consequences of a plea would by itself now be objectively unreasonable." Couto, 311 F.3d at 188 (2d Cir. 2002).

Mr. Okoh responsibly sought counsel to assure himself of his citizenship. Even after receiving counsel's opinion, he sought confirmation in order to be certain that his residence in the United States would not be at risk when attempting to resolve this case. Undoubtedly, had Petitioner not received the passport confirming that he was a citizen of the United States and/or was informed in any way of any possible issues relating to his citizenship, he would have conferred with counsel in order to avoid any possible consequences that a conviction for an aggravated felony would entail. Petitioner did not because he relied upon the conduct of the Government, the issuance of the passport.

---

[5] Numerous criminal law practice guides and treatises stress the importance of a defense lawyer's careful counseling of a non-citizen client on the subject of deportation. *See e.g.,* Gray ed., New York Criminal Practice at 273 (NYSBA 1998); Muldoon & Feuerstein, Handling a Criminal Case in New York § 21:232 (Thomson/West 2002); Amsterdam, Trial Manual for the Defense of Criminal Cases (Vol. 1) § 205 (ALI 1988); Bender, Criminal Defense Techniques §§ 60A.01, 60A.02 (2) (1999); Connell & Valladares, Cultural Issues in Criminal Defense § 11 (Juris. Pub. 2001).

As a result of the plea, the determination that the offense resulted in a loss of more than $10,000, and the conviction, the following legal consequences inevitable followed:

- Mr. Okoh was charged in immigration court with being a deportable alien on the basis of the criminal conviction, and would be subject to mandatory deportation. The immigration judge would have no authority to grant him any kind of discretionary relief. See 8 U.S.C. § 1227 (a) (2) (A) (iii), § 1229 (b) (a) (3) (barring cancellation of removal relief for a lawful permanent resident convicted of an "aggravated felony").

- If Mr. Okoh were to return to the United States illegally after being deported, he would face up to 20 years in prison for illegal re-entry into the country. See 8 U.S.C. § 1326 (b) (2).

See United States v. Amador-Leal, 276 F.3d 511 (9th Cir. 2002) (Deportation consequences under AEDPA and IIRIRA are automatic).

Thus, Mr. Okoh suffered actual prejudice as a result of misrepresentation of his citizenship and the resulting false inducement to plead guilty. Kwan, 407 F.3d at 1017. But for the conduct of the Government, there is more than a reasonable probability that Mr. Okoh would not have pleaded guilty and his attorney would have negotiated a plea that was not an aggravated felony, challenged the loss determination or insisted on going to trial. Id. As Mr. Okoh makes clear in his affidavit, that is exactly what he would have chosen to do if he had not been misled to believe that he was a citizen of the United States by the Government.[6]

---

[6] If the Government claims that the conduct of the other governmental agencies cannot be attributed to the prosecution **and** that such a misrepresentation is not sufficient to demonstrate that Petitioner's waivers and plea was not knowingly and intelligently made, counsel respectfully requests an opportunity to show that the conduct is attributable to the prosecution. See, United States v. Jennings, 960 F.2d 1488, 1490 (9th Cir. 1992) (citing cases in which prosecution was compelled to produce materials even if they were in the possession of another agency.)

## **CONCLUSION**

Thus, for all the reasons cited above, we respectfully request that the relief sought in the Notice of Motion for habeas relief pursuant to 28 U.S.C. § 2255 be in all respects granted.

                        Respectfully submitted,

                        Sam A. Schmidt, Esq. (ss9906)
                        Law Office of Sam A. Schmidt
                        111 Broadway Suite 1305
                        New York, N.Y. 10006
                        lawschmidt@aol.com

cc:    Hon. Michael J. Garcia
       United States Attorney
       1 St. Andrews Plaza
       New York, N.Y. 10007
       Att: Marcus Asner, Esq.