# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------**X**

### EUGENE OKOH,

**Petitioner**

- against -

### UNITED STATES OF AMERICA

**Respondent.**

-----------------------------------------------------------**X**

## APPENDIX FOR MOTION UNDER 28 U.S.C. SECTION 2255

## 06 CR 0009 (VM)

```
LAW OFFICE OF SAM A. SCHMIDT
Attorney for Petitioner Eugene Okoh
111 Broadway, Suite 1305
New York, New York 10006
(212) 346-4666 (tel)
(212) 346-4665 (fax)
Email: lawschmidt@aol.com
```

# TABLE OF CONTENTS

Page No.

AFFIDAVIT OF EUGENE OKOH........................................................... 1-4

INS DEPORTATION DOCUMENTS.................................................... 5-9

BIRTH CERTIFICATE (Eugene Okoh)................................................ 10

MOTHER NATURALIZATION CERTIFICATE................................. 11

TEMPORARY WORK PERMIT AND ALIEN REGISTRATION CARD.......... 12

INDICTMENT DATED JANUARY 4, 2006......................................... 13-16

EXCERPTS OF UNITED STATES PASSPORT.................................. 17-18

PLEA AGREEMENT............................................................................ 19-23

TRANSCRIPT OF PLEA DATED APRIL 11, 2006............................. 24-45

TRANSCRIPT OF SENTENCING HEARING DATED JULY 27, 2006............. 46-63

JUDGMENT OF CONVICTION........................................................... 64-69

AMENDED JUDGMENT OF CONVICTION...................................... 70-75

U.S. DEP'T OF STATE CORRESPONDENCE TO EUGENE OKOH.............. 76-77

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EUGENE OKOH

               Petitioner        **PETITIONER'S AFFIDAVIT**

   -against-

THE UNITED STATES OF AMERICA

               Respondent
--------------------------------------------------------x

State of New York }

              ss:

County of New York}

     EUGENE OKOH, being duly sworn deposes and says:

     I am the Petitioner in the above entitled case. I submit this affidavit in support of the motion to vacate my conviction and withdraw my plea under 28 U.S.C. § 2255. The facts stated in this affidavit are true except as stated to be based upon information and belief from other sources.

     I was born in Nigeria on August 21, 1983. On August 26, 1996, my mother became an American citizen while I was residing in Nigeria. In 1997, I entered the United States and remained without a valid visa or documentation. In March 2001, when I was seventeen (17) years old, I filed for an adjustment of status as being a minor child of an American citizen. While still seventeen (17) years old and awaiting for the adjustment of status, I received a temporary work permit. I received my alien registration card soon after February 11, 2002.

     On November 4, 2005, I was arrested and charged with participating in a conspiracy to commit bank fraud. I was assigned an attorney, Frank Handelman, Esq., to represent me. On

1

**1**

January 4, 2006, an Indictment was filed charging me with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349.

I understood that I obtained United States citizenship derivatively as a result of my mother's citizenship and contacted an immigration attorney to be sure. I was told that I did become a citizen derivatively and that I could apply for a certificate or passport as proof of my citizenship. I applied for such documentation, submitting my Nigerian birth certificate, my alien registration card and my mother's Certificate of Naturalization. I received a United States Passport with the number 216311494 on or about February 9, 2006.

Prior to receiving the passport, I had limited discussions with my assigned attorney relating to my options as to how to resolve my case. I understood that the choices were to go to trial or to plead guilty with or without cooperating. After receiving the passport and having no fear of immigration consequences, my discussions with my attorney turned to limiting the period of incarceration to as little as possible. The result of these discussions was the receipt of a plea agreement in which the Guidelines range was 8-14 months and the loss was more than $10,000.

As a result of the discussions with my attorney, I understood that the judge was not bound by the agreement nor the Guideline sentencing range, and I believed that the plea agreement was the best way to limit the time I would have to serve in jail. Limiting jail time was more important than any issue relating to loss or restitution. Because I did not believe that I faced any problems with my status as an American citizen, I had little or no discussion with my attorney as to the loss amount that I would be legally responsible for.

On April 11, 2006, I entered a guilty plea to the conspiracy to commit bank fraud. During the plea allocution, the district judge asked me if I was a citizen. Because I had received my passport

as confirmation of my citizenship and there was no doubt in my mind, I answered yes.

The district court then explained to me some of the civil rights, as a citizen, I may lose as a result of my conviction.   There was no mention of the amount of loss resulting from the offense of conviction.

On July 27, 2006 at the sentencing hearing, the amount of restitution was not determined and was left to be determined at some future time.   Though my attorney objected to the amount of loss that was noted in the presentence report, he made no effort to argue that the loss was less than $10,000.  I had no discussion as to the significance of the determination of the loss as it related to my status in the United States.

On July 27, 2006, I was sentenced to four (4) months incarceration and three (3) years supervised release with four (4) months home confinement with restitution to be set at a later date. I surrendered to the Bureau of Prisons on August 29, 2006.   On September 11, 2006, an amended judgment of conviction was filed setting restitution in the amount of $32,512.40.

Just prior to my scheduled release on December 29, 2007, an immigration hold was placed on me.  Soon after that, I learned that the United States Department of State claimed that I received a passport in error and that I was not a United States citizen.  I also learned that the offense that I pled guilty to was an "aggravated felony" under immigration law because it involved fraud and the loss to the victims was more than $10,000.

Had I not received the United States passport that confirmed both my understanding and my

3

immigration attorney's statement to me that I was a citizen, but instead, was informed that the Department of State believed I was not a United States citizen, I would have discussed the effects of any conviction on my ability to remain in the United States. I would have learned that I would face deportation if convicted of an aggravated felony and that the offense I was charged with would be an aggravated felony if the loss to the victims was greater than $10,000 because it involved fraud.

Under these circumstances I would not have pled guilty and conceded that the loss was more than $10,000. I understand that there were options available other than the plea agreement that I entered into. These options included going to trial, negotiating an amount certain of loss less than $10,000, pleading guilty to an offense that was not an aggravated felony and even requesting consideration for a deferred prosecution.

Since my attorney, the government prosecutor, the court and myself believed that I was a United States citizen, I had no discussions with my attorney on the effect that a conviction would have on my status in the United States. I also believe that my attorney had no discussions with the government's attorney relating to my immigration status during plea negotiations.

_____
EUGENE OKOH

Sworn to me this 25th
day of July, 2007

_____
Notary Public

NATHANIEL B. SMITH
Notary Public State of New York
No. 02SM603258
Qualfied in Kings County
Commission Expires Nov. 11, 200

4

| Alien's Name | File Number | Date |
|---|---|---|
| Eugene Odiji OKOH | Case No: CNJ0712000070<br>A079 112 055 | |

**The Service alleges that you:**

1) You are not a citizen or national of the United States;

2) You are a native of NIGERIA and a citizen of NIGERIA;

3) You were admitted to the United States at New York, NY on or about February 11, 2002 as an IMMIGRANT;

4) You were, on July 27, 2006, convicted in the United States District Court, Southern District of New York, for the offense of CONSPIRACY TO COMMIT BANK FRAUD in violation of Title 18 USC 1349 under case number 06CR0009;

5) For that offense, a sentence of one year or longer may be imposed;

6) You were ordered to pay restitution in the amount of $32,512.40.

**On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:**

Section 237(a)(2)(A)(i) of the Immigration and Nationality Act, as amended, in that you have been convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed.

Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a)(43)(M) of the Act, a law relating to an offense that (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or (ii) is described in The Internal Revenue Code of 1986, Section 7201 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000.

| Signature | Title |
|---|---|
| *Joseph P. Kenney* | ACTING SDO |

Form I-831 Continuation Page (Rev. 6/12/92)

5

# Notice to Respondent

**Warning:  Any statement you make may be used against you in removal proceedings.**

**Alien Registration:**  This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings.  You are required to carry it with you at all times.

**Representation:**  If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16.  Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:**  At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case.  If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:**  You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address.  If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

**Request for Prompt Hearing**

To expedite a determination in my case, I request an immediate hearing.  I waive my right to have a 10-day period prior to appearing before an immigration judge.

_____
(Signature of Respondent)

Before: _____

_____          Date: _____
(Signature and Title of INS Officer)

---

**Certificate of Service**

This Notice to Appear was served on the respondent by me on ___*12/29/2006*___ , in the following manner and in
                                                                                    (Date)

compliance with section 239(a)(1)(F) of the Act:

☑  in person              ☐  by certified mail, return receipt requested          ☐  by regular mail
☐  Attached is a credible fear worksheet.
☐  Attached is a list of organizations and attorneys which provide free legal services.
The alien was provided oral notice in the ___*English*___ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____          _____
(Signature of Respondent if Personally Served)          (Signature and Title of Officer)

Form I-862 (Rev. 3/22/99)N

**6**

U.S. Department of Justice

Immigration and Naturalization Service

# Warrant for Arrest of Alien

Case No:  CNJ0712000070

File No. **A079 112 055**

Date: **December 28, 2006**

**To any officer of the Immigration and Naturalization Service delegated authority pursuant to section 287 of the Immigration and Nationality Act:**

From evidence submitted to me, it appears that:

**Eugene Odiji OKOH AKA: OKOH, EUGENE**

(Full name of alien)

an alien who entered the United States at or near **New York, NY** on

(Port)

**February 11, 2002** is within the country in violation of the immigration laws and is

(Date)

therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act.

By virtue of the authority vested in me by the immigration laws of the United States and the regulations issued pursuant thereto, I command you to take the above-named alien into custody for proceedings in accordance with the applicable provisions of the immigration laws and regulations.

_Joseph P. Kenney_

(Signature of authorized INS official)

_Joseph P. Kenney_

(Print name of official)

**ACTING SDO**

(Title)

---

## Certificate of Service

Served by me at _Marlton    NJ_ on _12/29/2006_ at _12:30 pm_.

I certify that following such service, the alien was advised concerning his or her right to counsel and was furnished a copy of this warrant.

(Signature of officer serving warrant)

_Deportation Officer_

(Title of officer serving warrant)

Form I-200 (Rev. 4-1-97)N

**7**

**U.S. Department of Justice**

Immigration and Naturalization Service

## Notice of Custody Determination

Eugene Odiji OKOH  AKA: OKOH, EUGENE

C/O US BOP - FORT DIX FCI
PO BOX 38
FORT DIX, NJ 08640

**Case No:** CNJ0712000070
File No: A079 112 055

Date: 12/28/2006

Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that pending a final determination by the immigration judge in your case, and in the event you are ordered removed from the United States, until you are taken into custody for removal, you shall be:

☒ detained in the custody of this Service.

☐ released under bond in the amount of $_____.

☐ released on your own recognizance.

☐ You may request a review of this determination by an immigration judge.

☒ You may not request a review of this determination by an immigration judge because the Immigration and Nationality Act prohibits your release from custody.

_____
(Signature of authorized officer)

ACTING SDO
_____
(Title of authorized officer)

Cherry Hill, New Jersey
_____
(INS office location)

☒ I do  ☐ do not request a redetermination of this custody decision by an immigration judge.
☒ I acknowledge receipt of this notification.

_____
(Signature of respondent)

12/29/2006
_____
(Date)

### RESULT OF CUSTODY REDETERMINATION

On _____, custody status/conditions for release were reconsidered by:

☐ Immigration Judge    ☐ District Director    ☐ Board of Immigration Appeals

The results of the redetermination/reconsideration are:

☐ No change - Original determination upheld.    ☐ Release-Order of Recognizance
☐ Detain in custody of this Service.    ☐ Release-Personal Recognizance
☐ Bond amount reset to _____    ☐ Other: _____

_____
(Signature of officer)

Form I-286 (Rev. 4-1-97)N

**U. S. Department of Justice**

Immigration and Naturalization Service

# Notice to Appear

## In removal proceedings under section 240 of the Immigration and Nationality Act

File No: **A079 112 055**

Case No: **CNJ0712000070**

In the Matter of:

Respondent: **Eugene Odiji OKOH AKA: OKOH, EUGENE** _____ currently residing at:

**C/O US BOP - FORT DIX FCI PO BOX 38**
**FORT DIX NEW JERSEY 08640**                                              **(609)723-1100**

                                  (Number, street, city state and ZIP code)                      (Area code and phone number)

☐ 1. You are an arriving alien.

☐ 2. You are an alien present in the United States who has not been admitted or paroled.

☒ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

       **See Continuation Page Made a Part Hereof**

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

       **See Continuation Page Made a Part Hereof**

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8 CFR 208.30(f)(2)  ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: _____
**970 Broad Street Room 1135 Newark NEW JERSEY US 07102**
                      (Complete Address of Immigration Court, Including Room Number, if any)

on **a date to be set**     at **a time to be set**   to show why you should not be removed from the United States based on the
    (Date)             (Time)

charge(s) set forth above.

                                         *Joseph P. Kenney*

                               **ACTING SDO**
                                      (Signature and Title of Issuing Officer)

Date: _**12/ 28 / 2006**_                     **Cherry Hill, New Jersey**
                                               (City and State)

### See reverse for important information

Form I-862 (Rev. 3/22/99)N

**9**

Form B.2/Z 5

**CAUTION:** Any person who (1) Falsifies any of the particulars on this certificate or (2) uses a falsified certificate as true, knowing it to be false is liable to prosecution.



**ORIGINAL**

## FEDERAL REPUBLIC OF NIGERIA
# NATIONAL POPULATION COMMISSION

### CERTIFICATE OF BIRTH No B.2/Z.5l    18755649

issued under the Births and deaths, etc. (Compulsory Registration) Decree 69 of 1992

Registration Centre _CITY HALL_

Town/Village _LAGOS_

L.G.A. _ISLAND_    I | 99 | 575

State _LAGOS_    Volume | Year | Entry No.

This is to certify that the birth, details of which are recorded herein has been registered on

_25_    _10_    at this Registration Centre
Day    Month

1.  Full Name: _OKOH    EUGENE    ODIJI_
    (Surname First)    (in block letters)

    Sex: _MALE_    3. Date of Birth: _21_ | _08_ | _83_
    Day | Month | Year

4.  Place of Birth: _LAGOS._    Town/Village

5.  Full name of Father: _OKOH    IGLATIUS._
    (Surname First)    (in block letters)

6.  Full name of Mother _IGWDOHI    OBADAN I_
    (Surname First)    (in block letters)

Place of Issue: _LAGOS._    _L ONITIJA_
    Name of Registrar

    _25-10-99_    Signature of Registrar

10



No. 22426870

THE UNITED STATES OF AMERICA

CERTIFICATE OF NATURALIZATION

Personal description of holder as of date of naturalization:

Date of birth: DECEMBER 6, 1958

Sex: FEMALE

Height: 5 feet 08 inches

Marital status: MARRIED

Country of former nationality: NIGERIA

I.N.O Registration No. A93 021 636

I certify that the description given is true, and that the photograph affixed hereto is a likeness of me.

Obada Iwoloki

(Complete and true signature of holder)

Be it known that, pursuant to an application filed with the Attorney General

at: NEW YORK, NY

The Attorney General having found that:

OBADAN IGWILCHI

then residing in the United States, intends to reside in the United States when so required by the Naturalization Laws of the United States, and had in all other respects complied with the applicable provisions of such naturalization laws, and was entitled to be admitted to citizenship, such person having taken the oath of allegiance in a ceremony conducted by the

U.S. IMMIGRATION & NATURALIZATION SERVICE

at: NEW YORK, NY    on: AUGUST 26, 1906

that such person is admitted as a citizen of the United States of America.

Eric Weissmann

Commissioner of Immigration and Naturalization

IT IS PUNISHABLE BY U. S. LAW TO COPY, PRINT OR PHOTOGRAPH THIS CERTIFICATE, WITHOUT LAWFUL AUTHORITY.

FORM N-550 REV. 8-91

13



**PERMANENT RESIDENT CARD**

NAME OKOH, EUGENE

INS A# 079-112-055

Birthdate    Category    Sex
08/21/83     IR7          M

Country of Birth
Nigeria

CARD EXPIRES 04/04/12
Resident Since 02/11/02

C1USA0791120553EAC0125953629<<
8308218M1204045NGA<<<<<<<<<<<7
OKOH<<EUGENE<<<<<<<<<<<<<<<<<



EMPLOYMENT AUTHORIZATION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA                    :        INDICTMENT

   - v -                                   :        06 Cr.

EUGENE OKOH,                                :
    a/k/a "Foots,"

          Defendant.       **06CRIM.   009**
                                            :

- - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JAN 4

## COUNT ONE

(Conspiracy to Commit Bank Fraud)

The Grand Jury charges:

1.   From in or about April 2005, through on or about
July 8, 2005, in the Southern District of New York and elsewhere,
EUGENE OKOH, a/k/a "Foots," the defendant, and others known and
unknown, unlawfully, willfully and knowingly combined, conspired,
confederated, and agreed together and with each other to commit
an offense against the United States, to wit, to violate Section
1344 of Title 18, United States Code.

2.   It was a part and an object of the conspiracy that
EUGENE OKOH, a/k/a "Foots," the defendant, and his co-
conspirators, unlawfully, willfully and knowingly would and did
execute and attempt to execute a scheme and artifice to defraud
financial institutions, the deposits of which were insured by the
FDIC, and to obtain moneys, funds, credits, assets, securities,
and other property owned by, and under the custody and control
of, such financial institutions, by means of false and fraudulent

13

pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344.

<u>Overt Acts</u>

3.   In furtherance of said conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   Sometime prior to on or about April 21, 2005, approximately $7,000 was transferred from the Royal Credit Union of Eau Claire, Wisconsin, to an account at Bank of America in Brooklyn, New York, which account was in the name of a co-conspirator ("CC-1").

b.   Sometime prior to on or about April 29, 2005, EUGENE OKOH, a/k/a "Foots," the defendant, approached a co-conspirator ("CC-2") and asked CC-2 to open a bank account at Citibank in Brooklyn, New York, and another bank account at Washington Mutual Bank in Brooklyn, New York.

c.   On or about May 12, 2005, approximately $14,000 was transferred from an account at Charter Oak Federal Credit Union of Groton, Connecticut, to CC-2's account at Washington Mutual.

d.   On or about May 13, 2005, a check for approximately $4,300, drawn on CC-2's Washington Mutual account and made out to CC-2, was cashed at a Washington Mutual branch in

2

the vicinity of 130 Second Avenue, New York, New York.

       e.   On or about May 16, 2005, a check for approximately $4,800, drawn on CC-2's Washington Mutual account and made out to CC-2, was cashed at a Washington Mutual branch in the vicinity of 111 Eighth Avenue, New York, New York.

       f.   On or about May 23, 2005, approximately $5,500 was transferred from Charter Oak Federal Credit Union of Groton, Connecticut, to CC-2's account at Washington Mutual.

       g.   On or about May 24, 2005, an individual withdrew approximately $500 from CC-2's Washington Mutual account at a Washington Mutual Bank branch located in the vicinity of 130 Second Avenue, New York, New York.

       h.   On or about July 6, 2005, an individual made two withdrawals of approximately $1,000 each from CC-2's Citibank account from an automatic teller machine at a Citibank branch located in the vicinity of 160 First Avenue, New York, New York.

       (Title 18, United States Code, Section 1349.)


_Mark Chao_
FOREPERSON

_Michael Garcia_
MICHAEL J. GARCIA
United States Attorney

3

15

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

EUGENE OKOH,
     a/k/a "Foots,"

Defendant.

INDICTMENT

06 Cr. ___

(Title 18, United States Code,
Sections 1349)

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

*Mark Chao*
Foreperson.

1/4/06    Case Assigned to J. Marero for all purposes

MJ Silverstein

16

*The Secretary of State of the United States of America
hereby requests all whom it may concern to permit the citizen/national
of the United States named herein to pass without delay or hindrance
and in case of need to give all lawful aid and protection.*

*Le Secrétaire d'État des États-Unis d'Amérique
prie par les présentes toutes autorités compétentes de laisser passer le citoyen
ou ressortissant des États-Unis titulaire du présent passeport, sans délai ni
difficulté et, en cas de besoin, de lui accorder toute aide et protection légitimes.*

*El Secretario de Estado de los Estados Unidos de América por el presente solicita a las
autoridades competentes permitir el paso del ciudadano o nacional de los Estados Unidos
aquí nombrado, sin demora ni dificultades, y en caso de necesidad, prestarle toda la
ayuda y protección lícitas.*

SIGNATURE OF BEARER/SIGNATURE DU TITULAIRE/FIRMA DEL TITULAR

**NOT VALID UNTIL SIGNED**



**PASSPORT**
**PASSEPORT**
**PASAPORTE**
USA

UNITED STATES OF AMERICA

Type / Type / Tipo   Code / Code / Código   Passport No. / No. du Passeport / No. de Pasaporte
P                     USA                    216311494

Surname / Nom / Apellidos
OKOH

Given Names / Prénoms / Nombres
EUGENE

Nationality / Nationalité / Nacionalidad
UNITED STATES OF AMERICA

Date of birth / Date de naissance / Fecha de nacimiento
21 Aug 1983

Sex / Sexe / Sexo    Place of birth / Lieu de naissance / Lugar de nacimiento
M                    NIGERIA

Date of issue / Date de délivrance / Fecha de expedición    Authority / Autorité / Autoridad
08 Feb 2006                                                 United States
                                                            Department of State
Date of expiration / Date d'expiration / Fecha de caducidad
07 Feb 2016

Amendments / Modifications / Enmiendas
See Page 24

P<USAOKOH<<EUGENE<<<<<<<<<<<<<<<<<<<<<<<<<<<
2163114947USA8308218M1602076<<<<<<<<<<<<<<02

17

*Amendments and Endorsements*
*Modifications et mentions spéciales*
*Enmiendas y Anotaciones*



1 4 9 3 7 4 5 0 1

19



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

〔RS 4/11/06〕

April 3, 2006

Frank Handelman, Esq.
3 New York Plaza, 10th Floor
New York, NY 10004

        Re:   **United States v. Eugene Okoh**
                **06 Cr. 009 (VM)**

Dear Mr. Handelman:

      On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Eugene Okoh ("the defendant") to Count One of the above-referenced Indictment. Count One charges the defendant with conspiracy to commit bank fraud, in violation of Title 18, United States Code, Sections 1349 and 1344, and carries a maximum sentence of thirty years' imprisonment, a maximum fine of $1,000,000, a $100 special assessment, and a maximum term of five years' supervised release. In addition to the foregoing, the Court must order restitution in accordance with Sections 3663, 3663A and 3664 of Title 18, United States Code.

      In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations as to which this Office cannot, and does not, make any agreement) for his involvement in a scheme to defraud various banks and credit unions, from in or about April 2005, through on or about July 8, 2005, by accessing the accounts of credit union customers, and causing those credit unions to wire transfer funds in those customer accounts to other accounts controlled by Okoh and his co-conspirators, as charged in Count One of the above-referenced Indictment. In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

02.01.05

1

19

Frank Handelman, Esq.
April 3, 2006

In consideration of the foregoing and pursuant to Sentencing Guidelines Section 6B1.4, the parties hereby stipulate to the following:

A.    **Offense Level**

1.    The Guideline applicable to the offense charged in Count One is U.S.S.G. § 2B1.1. Pursuant to U.S.S.G. § 2B1.1(a), the base offense level is seven. U.S.S.G. § 2B1.1(a)(1).

2.    The loss due to the offense charged in the Indictment is $38,500. Because the loss is greater than $30,000 but less than $70,000, the offense level is increased by six levels. U.S.S.G. § 2B1.1(b)(1)(D).

3.    Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to § 3E1.1(a), U.S.S.G.

In accordance with the above, the applicable Guidelines offense level is 11.

B.    **Criminal History Category**

Based upon the information now available to this Office (including representations by the defense), the defendant has zero criminal history points, placing him in Criminal History Category I.

C.    **Sentencing Range**

Based upon the calculations set forth above, the defendant's sentencing Guidelines range is 8 to 14 months' imprisonment (Zone C) (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to § 5E1.2. At Guidelines level 11, the applicable fine range is $2,000 to $20,000. U.S.S.G. § 5E1.2(c)(3).

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein. Nor will either party suggest that the Probation Department consider such a departure or adjustment, or suggest that the Court *sua sponte* consider such a departure or adjustment.

The parties further agree that a sentence within the Stipulated Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, Section 3553(a). However, the parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Department consider a sentence outside of the Stipulated Guidelines Range, and suggest that the Court *sua sponte* consider a sentence outside

20

Frank Handelman, Esq.
April 3, 2006

of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

   Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Department or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Sentencing range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, see U.S.S.G. §3E1.1, and/or imposition of an adjustment for obstruction of justice, see U.S.S.G. §3C1.1, regardless of any stipulation set forth above, should the defendant move to withdraw his guilty plea once it is entered, or should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

   It is understood that pursuant to Sentencing Guidelines §6B1.4(d), neither the Probation Department nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Department or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the Stipulated Guidelines Range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

   It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is understood that the Sentencing Guidelines are not binding on the Court.    The defendant acknowledges that his entry of a guilty plea to the charged offense authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

   It is agreed (i) that the defendant will not file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section 2241, any sentence within or below the Stipulated Guidelines Range set forth above and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. It is further agreed that any sentence within the Stipulated Guidelines range is reasonable. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that

21

Frank Handelman, Esq.
April 3, 2006

portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

By entering this plea of guilty, the defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. The defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or

02.01.05

4

Frank Handelman, Esq.
April 3, 2006

conditions have been entered into other than those set forth in this Agreement, and none will be
entered into unless in writing and signed by all parties.

Very truly yours,

MICHAEL J. GARCIA
United States Attorney

By:

_____
MARCUS A. ASNER
Assistant United States Attorney
(212) 637-2483

APPROVED:

_____
MARC A. WEINSTEIN
Chief, Major Crimes Unit

AGREED AND CONSENTED TO:


_____        _____
EUGENE OKOH                             DATE


APPROVED:


_____        _____
FRANK HANDELMAN                         DATE
Attorney for Eugene Okoh

02.01.05                                5

1

64bPokoP

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    -------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                                06 Crim. 009 (VM)

5    EUGENE OKOH,

6              Defendant.

7    -------------------------------x

8                                      New York, New York
                                       April 11, 2006
9                                      10:45 a.m.

10

     Before:
11
                          HON. VICTOR MARRERO,
12
                                       District Judge
13

14                          APPEARANCES

15       MICHAEL J. GARCIA,
         United States Attorney for the
16       Southern District of New York
     BY:   MARCUS A. ASNER,
17         Assistant United States Attorney

18   FRANK HANDELMAN,
         Attorney for Defendant
19

20

21

22

23

24

25

24

64bPokoP

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4                v.                      06 Crim. 009 (VM)

5  EUGENE OKOH,

6                Defendant.

7  ------------------------------x

8                                       New York, New York
                                        April 11, 2006
9                                       10:45 a.m.

10

   Before:
11
                       HON. VICTOR MARRERO,
12
                                       District Judge
13

14                       APPEARANCES

15      MICHAEL J. GARCIA,
        United States Attorney for the
16      Southern District of New York
   BY:  MARCUS A. ASNER,
17      Assistant United States Attorney

18  FRANK HANDELMAN,
        Attorney for Defendant
19

20

21

22

23

24

25

2

64bPokoP

1           (In open court; case called)

2           THE COURT::  Good morning.

3           MR. HANDELMAN:  Good morning, your Honor.

4           THE COURT:  Good morning.

5           This is a proceeding in the matter of United States

6    verse Okoh, Docket No. 06 0009.

7           Counsel, please enter your appearance for the record.

8           MR. ASNER:  Marcus Asner for the government.  Good

9    morning, your Honor.

10          MR. HANDELMAN:  Good morning, your Honor, Frank

11   Handelman for Mr. Okoh.

12          And as I think you have been told, Mr. Okoh was at the

13   other courthouse for some time, and he apologizes profusely.

14          THE COURT:  All right.  Mr. Handelman, is there an

15   application on behalf of Mr. Okoh?

16          MR. HANDELMAN:  There is, your Honor.  The application

17   is to enter a plea under the one count of this indictment,

18   pursuant to a written plea agreement which is entered into with

19   the government.

20          THE COURT:  Would you specify the particular charge

21   contained in the indictment to which your client's plea

22   relates?

23          MR. HANDELMAN:  I'm sorry, Judge?

24          THE COURT::  Specify the charge to which your client's

25   plea relates.

26

3

64bPokoP

1          MR. HANDELMAN:  He is pleading guilty to 18 U.S.C.

2    1349 and 1344.  Essentially involving bank fraud charges.

3          THE COURT:  The clerk will administer the oath to the

4    defendant.

5          (Defendant sworn)

6          THE COURT:  Mr. Okoh, do you understand that you are

7    now under oath and that if you answer any of my questions

8    falsely, your false answers may later be used against you in

9    another prosecution for perjury or for making a false

10   statement?

11         THE DEFENDANT:  Yes.

12         THE COURT:  The Court intends to question you

13   regarding the facts of the crimes alleged by the governments.

14   Do you understand that you have a constitutional right to

15   remain silent and not incriminate yourself?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do I understand correctly that you wish to

18   waive that right for the purpose of pleading to the charge set

19   forth in Count One of the indictment?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Mr. Okoh, if you do not understand

22   anything as we proceed here this morning, please advise me

23   immediately and I or your attorney will explain it to you.

24         Mr. Okoh, please state your full name for the record,

25   and spell it.

64bPokoP

1          THE DEFENDANT:  E-U-G-E-N-E, O-K-O-H.  Eugene Okoh.

2          THE COURT:  And how old are you?

3          THE DEFENDANT:  22.

4          THE COURT:  How far did you go in school?

5          THE DEFENDANT:  I got an Associate's Degree and some

6     work on my bachelor's.

7          THE COURT:  Are you now or have you recently been

8     under the care of a doctor or a psychiatrist?

9          THE DEFENDANT:  No.

10          THE COURT:  Have you ever been treated or hospitalized

11    for any mental illness or any type of addiction, including drug

12    or alcohol addiction?

13          THE DEFENDANT:  No.

14          THE COURT:  In the past 24 hours, have you taken any

15    drugs or medicine or pills, or have you consumed any alcohol?

16          THE DEFENDANT:  No.

17          THE COURT:  Is your mind clear today?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Are you feeling well today?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you have a rational and factual basis

22    for understanding the proceedings brought against you by the

23    government in the indictment, that is the charges set forth in

24    that indictment?

25          THE DEFENDANT:  Yes.

64bPokoP

1        THE COURT:  Do either counsel have any doubts to the

2    defendant's competence to plead at this time?

3        Mr. Handelman?

4        MR. HANDELMAN:  I do not, your Honor.

5        THE COURT:  Mr. Asner?

6        MR. ASNER:  No, your Honor.

7        THE COURT:  Your attorney has informed me that you

8    wish to enter a plea of guilty to the crime charged by the

9    government in Count One of the indictment No. 06 Cr. 009.  Is

10   that correct?

11       THE DEFENDANT:  Yes, sir.

12       THE COURT:  Count One of the indictment charges you

13   with bank fraud, in violation of Title 18, United States Code,

14   Section 1344 and Section 1349.

15       Mr. Okoh, do you understand this to be the charge in

16   the indictment to which your plea relates?

17       THE DEFENDANT:  Yes.

18       THE COURT:  And how do you wish to plead to this

19   charge?

20       THE DEFENDANT:  Guilty.

21       THE COURT:  Are you entering a plea of guilty to Count

22   One of the indictment that the government has brought against

23   you?

24       THE DEFENDANT:  Yes.

25       THE COURT:  Have you had a full opportunity to discuss

64bPokoP

1    your case with your attorney and discuss the consequences of

2    entering a plea of guilty to the charge set forth in the

3    indictment?

4              THE DEFENDANT:  I have, your Honor.

5              THE COURT:  Are you satisfied with your attorney and

6    his representation of you?

7              THE DEFENDANT:  I am.

8              THE COURT:  On the basis of Mr. Okoh's responses to my

9    questions, and my observations of his demeanor, I find that he

10   is fully competent to enter an informed plea at this time.

11             Before I accept a plea from you, Mr. Okoh, I am going

12   to ask you certain additional questions.  My questions will be

13   asked so that I am satisfied that the reason you wish to plead

14   guilty to the charges brought against you by the government in

15   this proceeding is that, in fact, you are guilty and that you

16   fully understand the consequences of your plea.

17             I understand this plea is being entered pursuant to a

18   plea agreement.  And I presume, Mr. Okoh, that you believe

19   there is some benefit to you or to your family in entering a

20   plea of guilty or in entering the plea agreement.

21             Whatever benefit you believe exists, however, is not a

22   reason to plead guilty.  You should plead guilty only if you

23   are guilty.  Meaning that you did commit the crime with which

24   the government has charged you, and for no other reason.

25             Do you understand this?

64bPokoP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Are you guilty of the charge brought

3    against you in Count One of this indictment?

4          THE DEFENDANT:  Yes, I am.

5          THE COURT:  I am now going to describe to you certain

6    rights that you have under the Constitution and laws of the

7    United States, that you will be giving up if you enter a plea

8    of guilty and I accept that plea.  Please listen carefully.  If

9    you do not understand something I am saying or describing, stop

10   me and I or your attorney will explain it to you more fully.

11         Under the Constitution and the laws of the United

12   States, you have a right to a speedy and public trial by a jury

13   on the charges against you contained in the indictment.

14         If there were trial, you would be presumed innocent

15   and the government would be required to prove you guilty by

16   competent evidence and beyond a reasonable doubt.

17         At a trial, the burden of proving you guilty beyond a

18   reasonable doubt would be on the government.  You would not

19   have to prove that you were innocent.

20         If there were a trial, a jury, that jury composed of

21   12 people selected from this district would have to agree

22   unanimously that you were guilty.

23         If there were a trial, you would have the right to be

24   represented by an attorney.  And if you could not afford one,

25   an attorney would be provided to you free of cost.

8

64bPokoP

1          If there were a trial, you would have the right to see

2   and to hear any and all witnesses against you.  And your

3   attorney could cross-examine them.  You would have a right to

4   have your attorney object to the government's evidence, and

5   offer evidence on your behalf, if you so desired.

6          And you would have a right to have subpoenas issued or

7   other compulsory process used to compel witnesses to testify in

8   your defense.

9          If there were a trial, you would have the right to

10  testify in your defense if you wanted.  But no one could force

11  you to testify, if you do not want to testify.  And, further,

12  no inference or suggestion of guilt could be drawn if you were

13  to choose not to testify in your defense at a trial.

14         If there were a trial, you would also have the right

15  to present evidence in your own behalf.

16         Mr. Okoh, do you understand each and every one of

17  these rights?

18         THE DEFENDANT:  I do.

19         THE COURT:  Do you have any questions about any of

20  these rights?

21         THE DEFENDANT:  No.

22         THE COURT:  Do you understand that by entering a plea

23  of guilty today, you are giving up each and every one of these

24  rights, that you are waiving these rights and that you will

25  have no trial?

64bPokoP

1            THE DEFENDANT:  I do.

2            THE COURT:  Mr. Okoh, are you a citizen of the United

3      States.

4            THE DEFENDANT:  I am.

5            THE COURT:  Since you are pleading guilty, I want to

6      make sure that you understand that if I accept your guilty plea

7      and I adjudge you guilty, such an adjudication may deprive you

8      of valuable civil rights such as the right to vote, and the

9      right to hold public office, the right to serve on a jury and

10     the right to possess any kind of firearm.

11            Do you understand this?

12            THE DEFENDANT:  I do.

13            THE COURT:  Do you understand that you can change your

14     mind and refuse to enter a plea of guilty, that you do not have

15     to enter this plea if you do not want to for any reason?

16            THE DEFENDANT:  I do.

17            THE COURT:  Mr. Okoh, have you received a copy of the

18     indictment?

19            THE DEFENDANT:  I have.

20            THE COURT:  Have you reviewed it?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Did your attorney discuss the indictment

23     with you?

24            THE DEFENDANT:  He did.

25            THE COURT:  Do you understand that Count One of the

64bPokoP

1    indictment charges that from in or about April 2005 through in

2    or about July 8, 2005 -- in the Souther District of New York,

3    you and others unlawfully, intentionally, knowingly

4    participated in a conspiracy to defraud various banks and

5    credit unions?

6         Do you understand this to be the charge contained in

7    the indictment, Count One?

8         THE DEFENDANT:  I do.

9         THE COURT:  By pleading guilty to this charge you are

10   pleading guilty to certain elements or parts of the crime of

11   bank fraud.

12        The elements of this crime are that there was a scheme

13   to obtain money or funds owned or under the custody or control

14   of the bank by means of materially false or fraudulent

15   representations or promises, and that you executed or attempted

16   to execute the scheme with the attempt to defraud the bank.

17   And that at the time of the execution of the scheme, the bank

18   had its deposits insured by the Federal Deposit Insurance

19   Corporation.

20        Mr. Okoh, do you understand the elements of the charge

21   contained in the indictment?

22        THE DEFENDANT:  I do.

23        THE COURT:  Do you understand that at trial, the

24   government would have to prove each and every part or element

25   of this charge beyond a reasonable doubt?

11

64bPokoP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that the statutory

3    maximum possible penalties for Count One of the indictment to

4    which you are entering to plead guilty is as follows:  A

5    maximum term of 30 years imprisonment, a maximum fine of $1

6    million, a mandatory $100 special assessment, plus a maximum

7    term of five years supervised release?

8          Supervised release means that you will be subject to

9    monitoring for a specified period after you are released from

10   prison, under terms and conditions which could lead to

11   reimprisonment without a jury trial if you violate them.

12         You understand these to be the maximum possible

13   penalties for Count One of the indictment?

14         THE DEFENDANT:  I do.

15         THE COURT:  Do you further understand that regardless

16   of this Court's decision to impose a fine, you will,

17   nevertheless, be required to pay a total special assessment of

18   $100 for Count One of the indictment, which will be imposed in

19   addition to what other restitution this Court may impose?

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  Do you further understand that the Court

22   is obligated to impose the special assessment just described as

23   part of your sentence?

24         THE DEFENDANT:  Yes, I do.

25         THE COURT:  And, finally, do you understand that as

64bPokoP

1   part of your sentence, the Court must order you to pay

2   restitution to the victims?  Restitution means that you will be

3   required to pay to the victims of the crimes amounts of which

4   they were deprived by reason of your crimes, as determined by

5   the court's probation office and adopted by this Court?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  Now, do you understand, Mr. Okoh, the

8   total maximum possible penalties for the offense charged in

9   Count One to which you are pleading guilty?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Under the current law there are sentencing

12   guidelines that judges must consider in determining your

13   sentence.  Have you talked to your attorney about the

14   sentencing guidelines?

15          THE DEFENDANT:  Yes, I have.

16          THE COURT:  Do you understand that the Court will not

17   be able to determine the sentence applicable under the

18   guidelines until after a presentence report has been completed

19   by the probation office, and after you and the government have

20   had a chance to challenge any of the facts reported by the

21   probation office?

22          THE DEFENDANT:  Yes, I have.

23          THE COURT:  Do you further understand that even after

24   it is determined what guidelines applies to your case, the

25   Court has the authority to impose a sentence that is higher or

13

64bPokoP

1   lower than the sentence called for by the guidelines.  Although

2   the Court does not have the authority to exceed any applicable

3   statutory maximum?

4           THE DEFENDANT:  Yes, I do.

5           THE COURT:  You understand that if your attorney, or

6   anyone else, has attempted to estimate or predict what your

7   sentence will be, it is possible they could be wrong.  That no

8   one, not even your attorney or the government, can or should

9   give you any assurance of what your sentence will be, since

10   that sentence will not be determined until after the probation

11   office report has been completed.  You understand this?

12           THE DEFENDANT:  Yes, I do.

13           THE COURT:  Do you also fully understand that even if

14   your sentence is different from what your attorney told you it

15   might be, or if it is different from what you expect, you will

16   still be bound to your guilty plea and you will not be allowed

17   to withdraw your guilty plea?

18           THE DEFENDANT:  I do.

19           THE COURT:  Finally, do you understand that parole has

20   been abolished in the federal system, and that you will not be

21   eligible to be released early from any parole?

22           THE DEFENDANT:  Yes, I do.

23           THE COURT:  I have a copy of the plea agreement which

24   is dated April 3, 2006.

25           Mr. Okoh, have you signed this agreement?

64bPokoP

1          THE COURT:  Has anyone offered you any inducements or

2     threatened you or forced you to plead guilty or to enter into a

3     plea agreement?

4          THE DEFENDANT:  No.

5          THE COURT:  Do you understand that I am completely

6     free to disregard the government's recommendation or position

7     regarding your sentence?  And that I can impose whatever

8     sentence I believe is appropriate under the applicable

9     guidelines and circumstances, and that in such a case you will

10    have no right to withdraw your plea?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  I would like to ask you questions about

13    certain provisions in the agreement.

14         Do you understand that under the terms of your plea

15    agreement you are agreeing not to appeal or litigate under

16    Title 28, United States Code, Section 2255 and/or Section 2241,

17    any sentence within or below the stipulated sentencing range

18    set forth in the plea agreement?

19         THE DEFENDANT:  Yes, I do.

20         THE COURT:  Do you further understand that this waiver

21    of your right to appeal is binding even if the Court imposes a

22    sentence of guidelines analysis different from what you and the

23    government have stipulated?  And that you are agreeing that any

24    appeal as to your sentence that is not foreclosed by your plea

25    agreement, will be limited to that portion of the sentencing

16

64bPokoP

1  calculation that is inconsistent with or not addressed by your

2  agreement?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  You understand that under the terms of

5  your plea agreement, you are waiving your right to withdraw

6  your plea or attack your conviction either on direct appeal or

7  collaterally, on the grounds that the government has failed to

8  produce any discovery material, Jencks Act material,

9  exculpatory material pursuant to Brady v. Maryland, other than

10 information establishing your factual innocence, and

11 impeachment pursuant Giglio versus United States, that has not

12 already been produced as of the date of your signing of the

13 plea agreement?

14         THE DEFENDANT:  Yes, I do.

15         THE COURT::  Do you also understand that by entering

16 the plea of guilty, this guilty plea, you are waiving any and

17 all rights you may have to require DNA testing of any physical

18 evidence in possession of the government?  And that as a result

19 of this waiver, any physical evidence in this case will not be

20 preserved by the government and will not be available for DNA

21 testing in the future?

22         THE DEFENDANT:  Yes, I do.

23         THE COURT:  Mr. Handelman, are you aware of any

24 defense that would prevail in the event the government's

25 charges involved in this case were to be tried, or do you know

64bPokoP

1    of any reason why your client should not be permitted to plead

2    guilty?

3              MR. HANDELMAN:  The answer is, unfortunately, no, to

4    both, Judge.

5              THE COURT:  Mr. Okoh, I would like you to tell me, in

6    your words, what you did in connection with the crimes to which

7    you are entering a plea of guilty.  Please state when the crime

8    occurred and what happened.

9              THE DEFENDANT:  In or about April I recruited some

10   women to open or use bank accounts for receiving money that was

11   fraudulently and illegally transferred from other people's bank

12   accounts.  Some of this money was then withdrawn by banks or

13   ATM withdrawals, and through ATMs in my hand in Manhattan.

14             THE COURT:  Let me ask a couple of questions,

15   Mr. Okoh, for clarification.  You indicated that you engaged in

16   these activities with other people?

17             THE DEFENDANT:  Yes.

18             THE COURT:  And was there an agreement between

19   yourself and these other people for you to engage in the

20   activities you described?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Did you know what the purpose of that

23   agreement was?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Was the purpose of that agreement to

40

64bPokoP

1    unlawfully obtain money or funds in the custody of the bank by

2    means of materially false or fraudulent representations?

3                THE DEFENDANT:  Yes.

4                THE COURT:  Did you then execute or attempt to execute

5    the scheme with the intent to defraud the bank?

6                THE DEFENDANT:  Yes.

7                THE COURT:  At the time that you entered into this

8    agreement, did you do so knowingly and willingly?

9                THE DEFENDANT:  Yes.

10               THE COURT:  And did you carry out the scheme -- did

11   you carry out this activity knowing its unlawful purpose and

12   with the attempt to carry out its unlawful purpose?

13               THE DEFENDANT:  Yes.

14               THE COURT:  When did these occur, Mr. Okoh?

15               THE DEFENDANT:  About from April to about July 2005.

16               THE COURT:  And to summarize, when you engaged in

17   these activities, did you know what you were doing was wrong

18   and illegal?

19               THE DEFENDANT:  Yes.

20               THE COURT:  Mr. Asner, does the government have any

21   questions concerning the sufficiency of the allocution with

22   regard to the elements of the crime?

23               MR. ASNER:  No, your Honor.

24               The government would represent, for the record, that

25   at trial we would be able to prove that the relevant banks were

41

64bPokoP

1    FDIC insured.  I don't believe the defense is contesting that.

2         THE COURT:  Mr. Asner, would you summarize the

3    evidence that the government would produce at trial if the

4    matter were to be tried, and what you intend to prove beyond a

5    reasonable doubt?

6         MR. ASNER:  Yes, your Honor.  Through a number of --

7    through records from a number of banks, the government would be

8    able to establish that there was a scheme to obtain wire

9    transfers from various credit unions throughout the United

10   States.  Money was transferred from those credit unions to bank

11   accounts here in the New York area, primarily in Brooklyn.

12        Among other things, the bank accounts were in the

13   names of two women.  Then subsequently, after the monies were

14   transferred to the bank accounts without authorization, monies

15   were withdrawn from the bank accounts in a number of places,

16   including through ATMs in Manhattan.

17        We would have, among other things, various witnesses,

18   including victim witnesses.  Potentially the women who were

19   recruited.  And the defendant gave a postarrest statement

20   inculpating himself.

21        THE COURT::  Have you heard what the government would

22   hope to prove beyond a reasonable doubt -- you agree with what

23   the government has said concerning the evidence and what it

24   would tend to establish beyond a reasonable doubt?

25        THE DEFENDANT:  Yes.

64bPokoP

1          THE COURT:  Now, Mr. Okoh, having heard me inform you

2     of your rights to trial and the consequences of pleading

3     guilty, and of the maximum sentence you may face, how do you

4     now plead to Count One of the indictment, No. 06 Cr. 009,

5     guilty or not guilty?

6          THE DEFENDANT:  Guilty.

7          THE COURT:  Are you pleading guilty because you are

8     guilty?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Are you pleading guilty voluntarily and of

11    your own free will?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Because you acknowledge that you are

14    guilty as charged in the indictment, because you know your

15    rights and are waiving them, and your plea is entered knowingly

16    and voluntarily, and is supported by an independent basis in

17    fact containing each of the essential elements of the offense,

18    I accept your guilty plea and adjudge you guilty to the offense

19    to which you have pleaded.

20         The probation officer will next prepare a presentence

21    report to assist the Court in sentencing you.

22         You will be interviewed by the probation officer.  It

23    is important that the information you provide to the probation

24    officer be truthful and accurate.  The report is important in

25    my decision.

64bPokoP

1        You and your attorney have a right and will have an

2    opportunity to examine the report, to challenge or comment upon

3    it, and to speak in your behalf before sentencing.

4        The government propose a sentencing date?

5        MR. ASNER:  Your Honor, after conferring with both the

6    defense and your Honor's deputy, we propose July 14, 2006 at 2

7    p.m.

8        THE DEPUTY CLERK:  Can we try for July 7?

9        MR. HANDELMAN:  Your Honor, on July 7 I will be out of

10    town, I have a family wedding.

11        THE DEPUTY CLERK:  July 6?

12        MR. HANDELMAN:  The 6th is okay.  I have a 4:30 in the

13    courthouse across the street, so I can appear earlier in the

14    day.

15        THE DEPUTY CLERK:  How about 3:30?

16        MR. ASNER:  That's fine with the government.

17        MR. HANDELMAN:  3:30 is fine as long as I can leave

18    by -- I am in front of Judge Koeltl that day at 4:30.

19        THE COURT:  3:30 should be sufficient time to get you

20    to Judge Koeltl.

21        MR. HANDELMAN:  Fine.

22        THE COURT:  Mr. Okoh, do you understand that if you

23    fail to appear on the date and time that has just been

24    determined, will be guilty of a criminal act of which you can

25    be sentenced to imprisonment separate, apart from, and in

64bPokoP

1    addition to any of the sentences that you would receive for the

2    crimes to which you just entered a plea of guilty?

3                THE DEFENDANT:  Yes, sir.

4                THE COURT:  What is the defendant's bail status?

5                MR. ASNER:  200,000 personal recognizance bond,

6    co-signed by three financially responsible parties.  Also

7    subject to strict pretrial supervision with drug treatment.

8    And his travels are restricted.

9                Your Honor, we would ask that the conditions remain as

10   set.

11               THE COURT:  Mr. Okoh, do you understand that all of

12   the conditions on which you have been released on bail to date

13   apply, and that the violation of any of those conditions can be

14   severe?

15               THE DEFENDANT:  Yes.

16               THE COURT:  Is there anything else from the

17   government?

18               MR. ASNER:  No, your Honor, thank you.

19               THE COURT:  Anything else, Mr. Handelman?

20               MR. HANDELMAN:  Just to note that my client's mother

21   and sister are in court, your Honor.

22               And also if we could have it indicated that I would

23   like to be present at any pretrial interview.

24               THE COURT:  Yes.

25                             o0o

45

67rrokos

1

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    -----------------------------x

 3    UNITED STATES OF AMERICA

 4            v.                          06 Cr. 9 (VM)

 5    EUGENE OKOH,
                                          Sentence
 6              Defendant.

 7    -----------------------------x

 8                                        New York, N.Y.
                                          July 27, 2006
 9                                        4:00 p.m.

10    Before:

11            HON. VICTOR MARRERO

12                                        District Judge

13

14            APPEARANCES

15

      MICHAEL J. GARCIA
16    United States Attorney for the
      Southern District of New York
17         1 St. Andrew's Plaza
           New York, N.Y.  10007
18    MARCUS ASNER
           Assistant United States Attorney

19

20    FRANK HANDELMAN, ESQ.
      Attorney for Defendant
21         Three New York Plaza
           New York, N.Y.  10004
22         (212) 422-0500

23

24

25
```

46

67rrokos                        Sentence

```
 1              (Case called)

 2              THE COURT:  This is a proceeding in the matter of the

 3     United States v. Okoh, docket number 06 Cr. 0009.  Counsel,

 4     please enter your appearances for the record.

 5              MR. ASNER:  Marcus Asner for the government.  Good

 6     afternoon, your Honor.

 7              MR. HANDELMAN:  Good afternoon, your Honor.  Frank

 8     Handelman for Mr. Okoh.  With me is my law clerk Carlene Meyer,

 9     M-E-Y-E-R.

10              THE COURT:  This is a sentencing in this pending

11     matter.  I note that Mr. Okoh is present in the courtroom

12     seated next to his attorney.

13              I have read and reviewed the pre-sentence

14     investigation report dated June 28, 2006, which was prepared in

15     connection with the sentence of Mr. Okoh.  I have also read the

16     letter from defense counsel dated July 17, 2006, as well as the

17     letters written on Mr. Okoh's behalf by friends and family

18     which were submitted by counsel on July 25, 2006.

19              Mr. Handelman, have you reviewed the pre-sentence

20     report?

21              MR. HANDELMAN:  I have, your Honor, with Mr. Okoh,

22     several times in my office.  By my letter of July 17th, I point

23     out the corrections that we would propose to the report.

24              THE COURT:  Thank you.

25              Mr. Okoh, please rise.  Mr. Okoh, have you read and
```

47

1   reviewed the pre-sentence report?

2              THE DEFENDANT:  Yes, I have, sir.

3              THE COURT:  Have you discussed that with your

4   attorney?

5              THE DEFENDANT:  Yes, I have.

6              THE COURT:  Thank you.

7          Mr. Asner, has the government read and reviewed the

8   report?

9              MR. ASNER:  Yes, your Honor.

10             THE COURT:  Does the government have any objections to

11  the report to record at this point?

12             MR. ASNER:  No, your Honor.

13             THE COURT:  Thank you.

14         Mr. Okoh, you may be seated.

15         On April 11, 2006, Mr. Okoh plead guilty to Count One

16  of indictment 06 Cr. 0009 pursuant to plea agreement and

17  knowingly and voluntarily allocuted that there was a factual

18  basis for the plea.  The court reiterates its acceptance of Mr.

19  Okoh's guilty plea.

20         Mr. Asner, does the government have any comments for

21  the Court's consideration with regard to sentencing?

22             MR. ASNER:  No, your Honor.  We would ask that the

23  Court follow the guidelines recommendation set out in the

24  pre-sentence investigation report.  We think it is appropriate

25  here.  Both as a matter of punishment but also as a matter of

49

1    deterrence, while Mr. Okoh did play a limited role, he did play

2    an important role in a larger conspiracy.

3            Identity theft is a big problem, and these schemes

4    don't work without people like Mr. Okoh, although being a

5    lesser player than some of the larger players, serving the role

6    that he did serve.  I think his lower role is reflected in the

7    guideline sentence, so I would ask your Honor to sentence him

8    within the guideline range.

9            THE COURT:  Mr. Handelman, do you have any additional

10   comments for the Court to consider with regard to sentencing.

11           MR. HANDELMAN:  First, I do want to note that my

12   client's mother and sister, who wrote to the Court, as well as

13   my client's friends are here today.  You have already referred

14   to the fact that you have seen my two submissions this week and

15   last week, so I won't detail them again.

16           I want to address two particular things.  One is the

17   restitution amount and the other is the sentence to be given.

18   We do concur that the 8 to 14 months is the appropriate legal

19   guideline range.  There is no dispute about that on a level 11

20   offense, with my client having no criminal record.

21           Should I address restitution first, your Honor?

22           THE COURT:  Yes.

23           MR. HANDELMAN:  In the indictment and complaint and

24   also contained in the plea agreement, it was agreed that the

25   amount of money that was improperly transferred with the

1    participation of Mr. Okoh was $38,700 from several banks into

2    other accounts that withdrawals were made from.  It is fairly

3    clear to us -- and we prepared a chart we have shared with the

4    government, and we have run the numbers a lot of times -- the

5    actual amount of money Mr. Okoh withdrew by ATM withdrawals and

6    check cashings comes to $27,980.  The rest was money that was

7    improperly transferred but never taken out.

8             We understand that 38,500 is the amount of money to be

9    considered in setting the guidelines, but the Court could make

10   a differently finding as to restitution, and should, on

11   whatever you find that number to be.  We think 27,980 is the

12   appropriate number.  So on that issue we are asking the Court

13   as part of the sentence and judgment to direct 27,980 as

14   restitution.

15             THE COURT:  Thank you.

16             Mr. Asner, does the government have any observations

17   or comments with regard to the amount of the restitution?

18             MR. ASNER:  Your Honor, Mr. Handelman is correct that

19   the 38.5 is the loss amount, because those were the amounts

20   that were transferred from various stolen or infiltrated bank

21   accounts to bank accounts controlled by the conspiracy.  A

22   lesser amount was withdrawn, and a reason for that is one of

23   the banks, I think it was Chase, it may have been Citibank,

24   caught on to the scheme and froze one of the accounts.

25             Unfortunately, I don't have the actual number, so I

67rrokos                      Sentence                          6

1   can't verify for the Court whether Mr. Handelman's number is

2   correct.   What I could do, we have the authority to do this

3   within 60 days, I could within a few days write a letter to the

4   Court laying out what the actual numbers were.

5            Mr. Handelman got on the line I think with the FBI

6   agent, or I had talked to the FBI agent.   He is right that

7   another examination was done.   I don't know off the top of my

8   head what the actual number is.   I thought it was $6,000 less.

9   But I can come back to the Court with that number within a day

10  or two.

11           THE COURT:   Why don't we postpone the determination of

12  the loss amount until a subsequent conference.

13           MR. ASNER:   Restitution amount.

14           THE COURT:   Yes, restitution amount, until a

15  subsequent conference, which could be held by telephonic means,

16  assuming that the defendant is prepared to waive an appearance

17  for that purpose.   At that point the parties, if they are in

18  agreement, can so indicate, and upon stipulation to that amount

19  the Court will adopt the amount.

20           MR. HANDELMAN:   That sounds excellent, Judge.   May I

21  talk to my client for one second and have him tell me that he

22  makes that waiver?

23           THE COURT:   Yes.

24           (Pause)

25           MR. HANDELMAN:   Your Honor, my client agrees with

51

```
 1    that.    That's fine.

 2             THE COURT:  Mr. Asner, when you have the appropriate

 3    amount to indicate to the Court what the appropriate amount

 4    that is agreed upon at that point, the Court will initiate a

 5    telephone conference on the record with a reporter at which we

 6    will memorialize the understanding and formally determine the

 7    amount of the restitution.

 8             MR. ASNER:  Right.  We will also do the breakout,

 9    because different banks are due different amounts.  We will

10    give you that breakout.

11             THE COURT:  Yes.

12             Mr. Handelman, do you want to continue?

13             MR. HANDELMAN:  Yes.  Your Honor, as I stated in my

14    letter, I am asking your Honor under 18 U.S.C. 3553(a) to

15    consider other factors in fashioning the appropriate sentence

16    for Eugene Okoh.  At 22 years of age, this is his only arrest.

17    That is to say, there have been no subsequent illegal acts

18    since his arrest in this case.  There have been no priors.

19             He is a young man who overcame sort of a tough and

20    difficult transitional life from childhood to adolescence and

21    early adulthood.  As I stated in my letter, he was transferred

22    from one family to another, often under very difficult

23    circumstances.  He grew up without his father at an early age.

24    His mother ended up in New York and became a citizen.  Finally,

25    she was able to get Mr. Okoh to come live with her after he
```

1    spent his early teenage years in London with family members who

2    had I can only say abused him and didn't treat him well.

3            He has managed to get himself through school.  He has

4    his Associate's degree from Manhattan Community College and

5    would be going to school now if this case hadn't occurred.  Of

6    course it occurred because of what he did, as he is the first

7    to tell you, but it interrupted that process.

8            He has worked consistently and continues to work now.

9    I can tell you that the entire time I have been his attorney he

10   has been both cooperative and fully acknowledging of what he

11   did in this case.  He has wanted to work out basically a plea

12   resolution to this case from the beginning, which shows full

13   acceptance of responsibility.

14           I have also seen a lot maturity and growth in Mr. Okoh

15   over the last period of many months in terms of his appearance

16   in my office, his demeanor, basically the way he handles

17   himself.  He seems to have changed substantially, much to my

18   pleasure, although of course for tough reasons on his side.

19           We are asking essentially that you drop the sentencing

20   level one notch.  At a guidelines level of 11, he is in Zone C.

21   I am not presuming what your Honor would give him.  If you gave

22   him an 8-month sentence, he would have to do 4 months in

23   custody and 4 months home detention or something like that.  I

24   am not saying that is an unfair sentence.

25           But if you dropped him one notch, to a level where he

1    could have terms of probation with conditions of community

2    confinement, and home detention if you want, I think he is the

3    kind of young man who can take full advantage of that

4    opportunity and you won't be sorry. He will continue to work,

5    and he will be able to regularly enroll in school, again going

6    for his bachelor's degree.

7              I have had a tremendous amount of contact with his

8    family. His sister, as you know, is a young attorney. She

9    graduated Seton Hall Law School, was admitted to the bar in the

10   last year, and has been very helpful in working on his case.

11   Had he a big support family, and he also place a big role in

12   other people's lives, as you can see from the letters I have

13   submitted.

14             That is our request. The plea agreement allows to us

15   make this request. We are hoping you will do it. It would

16   allow you to bring my client's offense level down from a

17   finding of 11 to a finding of 10, I believe, given that he has

18   no criminal record.

19             That is all I have. I am happy to answer any

20   questions. We do make that request. I know Mr. Okoh wants to

21   speak to the Court as well.

22             THE COURT: Thank you.

23             Mr. Okoh, is there anything you would like to say on

24   your own behalf?

25             THE DEFENDANT: Yes. I would like to apologize to

54

67rrokos        Sentence

1    anybody that got hurt through my actions directly or

2    indirectly.  My mother raised me with values and instilled

3    education from a young child till now.  I strayed because of

4    the fast life.  I just want to say that seeing my sister

5    graduate and getting admitted to the bar in New York and this

6    case right now has instilled the virtues of hard work and

7    dedication back into me.

8            I want to apologize to my family for putting them to

9    shame and to the Court.  I also want to let them know that I

10   promise to be a productive member of society and try to make

11   them proud of me.  Thank you.

12           THE COURT:  Thank you.

13           The decision by the United States Supreme Court in the

14   United States v. Booker changed the legal landscape in which

15   federal defendants are sentenced.  Although no longer bound by

16   the mandatory constraints of the guidelines, the Court must

17   consult those guidelines and take them into account when

18   sentencing.

19           Therefore, the Court has considered the finding of

20   fact stated in the pre-sentence report, as well as the

21   guidelines analysis and recommendations contained therein.  The

22   Court has weighed this information, along with the factors

23   listed in 18 U.S.C. Section 3553(a), in coming to its final

24   sentencing decision in this case.

25           The Court adopts the factual recitation in the

1  pre-sentence report and the guidelines offense level of 11.

2  The Court also adopts the criminal history category of I.

3  Under the sentencing guidelines, the applicable range of

4  imprisonment for this offense level and criminal history

5  category is 8 to 14 months.

6          Mr. Okoh, please rise.  I will now state sentence.

7          Considering the recommended guideline range along with

8  the other factors stated in 18 U.S.C. Section 3553(a), the

9  Court finds that a 4-month sentence of imprisonment followed by

10  3 years of supervised release with a special condition of 4

11  months of home detention is reasonable and appropriate and that

12  such a term is sufficient but not greater than necessary to

13  promote the proper objectives of sentencing.  The sentence is

14  authorized by sections 5C1.1(d) of the guidelines.

15          In the sentencing memorandum Mr. Handelman, on behalf

16  of Mr. Okoh, requested a noncustodial sentence outside the

17  applicable guidelines range.  The Court notes because Mr. Okoh

18  pled guilty to a Class B felony, he would not be eligible for

19  probation under 18 U.S.C. Section 3561.

20          Mr. Okoh points to his difficult childhood, including

21  mental abuse in the hands of relatives, stable work history,

22  educational pursuits, and strong family support as a basis for

23  a nonguidelines sentence.  As noted, the Court must evaluate as

24  a request for nonguidelines sentence by considering the

25  guidelines together with other factors outlined in 18 U.S.C.

56

1    Section 3553(a).

2         The Second Circuit has recently reiterated that the

3    sentencing court's post-Booker discretion is limited and must

4    be informed by the Section 3553(a) factors.  Specifically, in

5    United States v. Rattoballi, 453 F.3d 127, the court indicated

6    that the nonguidelines sentence that rests primarily in factors

7    that are not unique and personal to a particular defendant but

8    instead reflect considerations common to many, if not most,

9    defendants will be reviewed as inherently suspect.  The court

10   also indicated in that case that the guidelines are not just

11   another factor to be considered as a Section 3553(a) factor.

12        In this case the Court does not find circumstances

13   sufficiently unique or compelling to impose a nonguideline

14   sentence.  While Mr. Okoh's strong employment history and

15   educational goals as well as strong family support decrease his

16   chances of recidivism, these factors are not so uncommon as to

17   warrant imposition of a nonguidelines sentence in this case.

18        Mr. Okoh, you will also be ordered to pay restitution

19   to the clerk of court in this district in an amount to be

20   determined in accordance with the procedure the Court outlined

21   earlier.  The restitution shall be paid in monthly installments

22   of 10 percent of your gross monthly income over a period of

23   supervision to commence 30 days after release from

24   incarceration.

25        If you are engaged in a UNICOR program while in

1   custody, you shall make payments towards restitution while you

2   are in custody.  If you are employed in a non-UNICOR work

3   program, you shall pay $25 per quarter towards the penalties.

4   If you participate in a UNICOR work program Grade 1 through 4,

5   then you shall pay 50 percent of your monthly UNICOR earnings

6   towards the restitution.

7            The factors listed in 18 U.S.C. 3664(f)(2) were

8   considered in determining the payment schedule.  You shall

9   notify the United States Attorney for this district within 30

10  days of any change of mailing or residence address that occurs

11  while any portion of the restitution remains unpaid.

12           The Court will not impose a fine because the Court has

13  determined that you do not have the ability to pay such a fine,

14  especially in light of the restitution order.  However, you are

15  ordered to pay to the United States a special assessment of

16  $100, which shall be due immediately.

17           You must comply with standard conditions 1 through 13

18  of probation and the following mandatory conditions:

19           You shall not commit another federal, state, or local

20  crime;

21           You shall not illegally possess a controlled

22  substance;

23           You shall not possess a firearm or destructive device;

24           You shall cooperate in the collection of DNA as

25  directed by the probation officer.

58

1          The mandatory drug testing condition is suspended due

2    to the imposition of a special condition requiring drug

3    treatment and testing.

4          Your supervised release will also be subject to

5    standard conditions of supervision 1 through 13 and the

6    following three special conditions:

7          You shall comply with the conditions of home

8    confinement for a period of 4 months.  During such period of

9    home confinement you will remain at your place of residence

10   except for the purpose of employment, attending school or other

11   educational purposes, and such other activities as may be

12   approved by the probation officer.

13         At the direction of the probation officer, you shall

14   be required to wear an electronic monitoring device and follow

15   electronic monitoring procedures specified by the probation

16   officer.  You will maintain a telephone at your residence

17   without call forwarding, a modem, caller ID, call waiting, or

18   portable cordless capability for the period indicated.

19         Home confinement shall commence on a date to be

20   determined by the probation officer, and if so directed by the

21   probation officer, you will pay the cost of home confinement on

22   a sole payment or co-payment basis.

23         You shall provide the probation officer with access to

24   any requested financial information.  You shall not incur new

25   credit card charges or open additional lines of credit without

```
1    the approval of the probation officer unless you are in

2    compliance with the installment payment schedule for your

3    restitution obligations.

4         You shall participate in a program approved by the

5    United States Probation Office, which program may include

6    testing to determine whether you may have reverted to using

7    drugs or alcohol.  The Court authorizes the release of

8    available drug treatment evaluations and reports to the

9    substance abuse treatment provider as directed by the probation

10   officer.  You shall be required to contribute to the cost of

11   services rendered, that is, co-payment, in an amount determined

12   by the probation officer based on availability to pay or

13   availability of third-party payment.

14        Mr. Okoh, do you understand each of these conditions?

15        THE DEFENDANT:  Yes.

16        THE COURT:  The sentence as stated is imposed.  You

17   are directed to report to the nearest probation office within

18   72 hours of release from custody.  Further, the Court

19   recommends that you be supervised by the district of your

20   residence.

21        Mr. Okoh, to the extent that you may have retained any

22   right to appeal your sentence and you are unable to pay the

23   cost of an appeal, you have the right to apply for leave to

24   appeal in forma pauperis, meaning as a poor person.  If you

25   make such a request, the clerk of court must immediately
```

1    prepare and file a notice of appeal on your behalf.

2           Do you understand your right to appeal to the extent

3    that it may exist?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Mr. Asner, are there any remaining counts

6    or underlying indictments that need to be dismissed at this

7    time?

8           MR. ASNER:  No, your Honor.

9           THE COURT:  Is there anything else from the

10   government?

11          MR. ASNER:  No, your Honor.  Thank you.

12          THE COURT:  Mr. Handelman, is there anything else from

13   defendant?

14          MR. HANDELMAN:  Primarily, Judge, I would ask if you

15   would set a voluntary reporting date for Mr. Okoh.  I notice

16   that the probation department in its report says he is a good

17   candidate for voluntary surrender.  I think the government

18   would not object.

19          MR. ASNER:  No objection to that, your Honor.

20          MR. HANDELMAN:  We would ask for a date in mid

21   September perhaps.

22          And there is one more to that, Judge.  I would ask if

23   you could recommend to the Bureau of Prisons, this is a short

24   sentence, that he be allowed to be held in one of the

25   institutions in the metropolitan New York area -- we know you

61

1   can't control that, but you can recommend it -- so his family

2   can visit him.

3           THE COURT:  The Court will so recommend.  The Court

4   will approve self-surrender on the last Friday in September --

5           MR. HANDELMAN:  The 29th, Judge.

6           THE COURT:  -- September 29th, by noon, to the United

7   States Marshal for this district or to the Bureau of Prisons

8   facility designated by the Bureau of Prisons if one has been

9   designated by then.

10          Mr. Okoh, do you understand that if you fail to report

11  or to surrender on the date indicated, you will be subject to

12  prosecution for an offense different from and punishment in

13  addition to that which the Court has imposed on you today?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Mr. Asner, what is the bail status of the

16  defendant?

17          MR. ASNER:  Your Honor, I believe he has a $200,000

18  personal recognizance bond.  I think it is two cosigners, but

19  it may be three.  Your Honor, we would ask that bond be

20  continued as set.

21          THE COURT:  All right.  The bail conditions will be

22  maintained as current.

23          Mr. Okoh, do you also understand that you will remain

24  out on bail until your surrender date on the same terms and

25  conditions and that any violation of those terms can be severe?

67rrokos                    Sentence                        18

1              THE DEFENDANT:  Yes.

2              MR. HANDELMAN:  Finally, Judge, could I get permission

3    to order these minutes under CJA so I have a copy and so I can

4    provide a copy to Mr. Okoh?

5              THE COURT:  Yes.

6              MR. HANDELMAN:  Thank you.

7              THE COURT:  If there is nothing else, I thank you.

8    Have a good day.

9              (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

47939 / S. Campbell.

**FILE COPY**

# UNITED STATES DISTRICT COURT

_____Southern_____   District of   _____New York_____

| | |
|---|---|
| UNITED STATES OF AMERICA<br>V.<br><br>EUGENE OKOH | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:   06 CR 0009<br><br>USM Number:   58405-054<br><br>Frank Handelman, Esq.<br>Defendant's Attorney |

**THE DEFENDANT:**

X pleaded guilty to count(s)   1 _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit bank fraud | 2005 | 1 |

The defendant is sentenced as provided in pages 2 through ____6____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

X Count(s)   All underlying counts _____   ☐ is   X are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

A TRUE COPY
J. MICHAEL McMAHON, CLERK

BY _____
DEPUTY CLERK

7/27/06
Date of Imposition of Judgment

_____
Signature of Judge

Victor Marrero, U.S.D.J.
Name and Title of Judge

8/10/06
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-10-06

64

AO 245B    (Rev. 06/05) Judgment in Criminal Case
        Sheet 2 — Imprisonment

Judgment — Page   2   of   6  

**DEFENDANT:**      Eugene Okoh
**CASE NUMBER:**  06 CR 009

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

4 months.

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

X The defendant shall surrender to the United States Marshal for this district:

    X at       12:00       ☐ a.m.  X p.m.  on       9/29/06      .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on                 .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on                      to                

a                      , with a certified copy of this judgment.

                                                  
                              UNITED STATES MARSHAL

By                                          
                              DEPUTY UNITED STATES MARSHAL



AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __6__

DEFENDANT: Eugene Okoh
CASE NUMBER: 06 CR 009

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

3 years., with a four month term of home confinement

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

66

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 3C — Supervised Release

DEFENDANT:       Eugene Okoh
CASE NUMBER:     06 Cr 009

Judgment—Page __4__ of __6__

## SPECIAL CONDITIONS OF SUPERVISION

(1) The Defendant shall comply with the conditions of home confinement for a period of four months. During such period of home confinement, the Defendant shall remain at his place of residence except for the purpose of employment, educational pursuits and other activities approved by his probation officer. The Defendant shall maintain a telephone at your residence without call forwarding, a modem, caller id, call waiting, or portable cordless capability for the above period. Home confinement shall commence on a date to be determined by the Defendant's probation officer, and if so directed by the probation officer, Defendant shall pay the costs of home confinement on a self-payment or co-payment basis. In addition, if so directed by the probation officer, the Defendant shall be required to wear an electronic monitoring device and follow electric monitoring procedures specified by his probation officer.

(2) Defendant shall provide the probation officer with access to any requested financial information.

(3) Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless he is in compliance with the installment payment schedule for restitution obligations; and

(4) Defendant shall participate in a drug and alcohol treatment program approved by the probation office which may include random testing to determine whether or not defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse provider, as approved by the probation officer. Defendant shall be required to contribute to the costs of services rendered in an amount to be determined by the probation officer, based on the defendant's ability to pay.

Upon finding a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____  1/25/07
Defendant / Date

_____  1/25/07
U.S. Probation Officer / Date

67

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | | Judgment — Page 5 of 6 |
|---|---|---|

**DEFENDANT:** Eugene Okoh
**CASE NUMBER:** 06 CR 009

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $ 100 | $ | $ TBD |

X    The determination of restitution is deferred until ___Oct.___. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐    The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| **TOTALS** | $ _____ 0 | $ _____ 0 | |

☐    Restitution amount ordered pursuant to plea agreement   $ _____

☐    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐    the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐    the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**68**

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

| | |
|---|---|
| **DEFENDANT:** | Eugene Okoh |
| **CASE NUMBER:** | 06 Cr 009 |

Judgment — Page __6__ of __6__

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**    X    Lump sum payment of $ __1__ due immediately, balance due

    ☐ not later than _____ , or
    X in accordance with ☐ C, ☐ D, ☐ E, or X F below; or

**B**    ☐    Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C**    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**    X    Special instructions regarding the payment of criminal monetary penalties:

Restitution amount to be determined. Court will file amended judgement. If the defendant is engaged in a BOP non-Unicor work program, he shall pay $25 per quarter toward the criminal financial penalties. However, if he participates in the BOP's Unicor program as a Grade 1 through 4, he shall pay 50% of his monthly Unicor earnings toward the criminal financial penalties, consistent with BOP regulations. The balance of the restitution shall be paid in monthly installments of 10% of gross monthly income over a period of supervision to commence 30 days after release from custody.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

Defendant shall pay restitution joint and severally with any defendants assigned restitution.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

69

# UNITED STATES DISTRICT COURT

### District of

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| **V.** | |
| | Case Number:    06 CR 0009 |
| Eugene Okoh | USM Number:    58405-054 |
| **Date of Original Judgment:** 8/10/06 | <u>Frank Handelman, Esq.</u> |
| **(Or Date of Last Amended Judgment)** | Defendant's Attorney |

**Reason for Amendment:**

| | |
|---|---|
| ☐ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2)) | ☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e)) |
| ☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b)) | ☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1)) |
| ☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a)) | ☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2)) |
| ☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36) | ☐ Direct Motion to District Court Pursuant ☐ 28 U.S.C. § 2255 or ☐ 18 U.S.C. § 3559(c)(7) |
| | X Modification of Restitution Order (18 U.S.C. § 3664) |

**THE DEFENDANT:**

x   pleaded guilty to count(s)    1

☐   pleaded nolo contendere to count(s)
    which was accepted by the court.

☐   was found guilty on count(s)
    after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| <u>Title & Section</u> | <u>Nature of Offense</u> | <u>Offense Ended</u> | <u>Count</u> |
|---|---|---|---|
| 18 USC § 1349 | Conspiracy to commit bank fraud | 2005 | 1 |

The defendant is sentenced as provided in pages 2    6                of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐   The defendant has been found not guilty on count(s)

X   Count(s)          all underlying counts          ☐ is   X are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

9/11/06
Date of Imposition of Judgment

_(signature)_
Signature of Judge

Victor Marrero, U.S.D.J.
Name and Title of Judge

9/11/06
Date

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-11-06

A TRUE COPY
J. MICHAEL McMAHON, CLERK

BY _(signature)_
DEPUTY CLERK

70

Judgment — Page ___2___ of ___6___

DEFENDANT:        Eugene Okoh
CASE NUMBER:    06 CR 0009

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term

4 months.  Change in surrender date: As directed in the Court's August 29, 2006 order, defendant was ordered, upon his request, to surrender to the marshals for this district on August 31, 2006 rather than the September 29, 2006 surrender date that was indicated in the original judgement.

☐   The court makes the following recommendations to the Bureau of Prisons:

☐   The defendant is remanded to the custody of the United States Marshal.

X   The defendant shall surrender to the United States Marshal for this district:

    X   at _____12:00_____    ☐ a.m.   X   p.m.   on _____8/31/06_____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____  to  _____

a _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**71**

AO 245C    (Rev. 06/05) Amended Judgment in a Criminal Case
Sheet 3 — Supervised Release

(NOTE: Identify Changes with Asterisks (*))

Judgment—Page ___3___ of ___6___

DEFENDANT:    Eugene Okoh
CASE NUMBER:    06 CR 009

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of
3 years, with a special condition of four months home confinement.

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of
    future substance abuse. (Check, if applicable.)

☐    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a
    student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record, personal history, or characteristics and shall permit the probation officer to make such notifications and confirm the

AO 245C    (Rev. 06/05) Amended Judgment in a Criminal Case
Sheet 3C — Supervised Release

(NOTE: Identify Changes with Asterisks (*))

Judgment—Page ___4___ of ___6___

DEFENDANT:        Eugene Okoh
CASE NUMBER:    06 CR 0009

## SPECIAL CONDITIONS OF SUPERVISION

(1) The defendant shall comply with the conditions of home confinement for a period of four months.  During such period of home confinement the Defendant shall remain at his place of residence except for the purpose of employment, educational pursuits and other activities approved by his probation officer.  The Defendant shall maintain a telephone at his residence without call forwarding, a modem, caller ID, call waiting, or portable cordless capacity for the above period.  Home confinement shall commence on a date to be determined by the Defendant's probation officer, and if so directed by the probation officer, Defendant shall pay the costs of home confinement on a self payment or co-payment basis.  In addition, if so directed by the probation officer, the defendant shall be required to wear an electronic monitoring device and follow electronic monitoring procedures specified by his probation officer.

(2) Defendant shall provide the probation officer with access to any requested financial information.

(3) Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless he is in compliance with the installment payment schedule for restitution obligations; and

(4) Defendant shall participate in a drug and alcohol treatment program approved by the probation office which may include random testing to determine whether or not defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse provider, as approved by the probation officer.  Defendant shall be required to contribute the costs of services rendered in an amount to be determined by the probation officer, based on the Defendant's ability to pay.

73

DEFENDANT: Eugene Okoh
CASE NUMBER: 06 CR 0009

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 100 | $ 0 | $ 32,512.40 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

X The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Charter Oak Federal Credit Union, 32 Chicago Avenue Groton, CT 06241, ATTN: Account #0000278420 | $10,000 | $10,000 | pro rata |
| Charter Oak Federal Credit Union, c/o Chubb Group of Insurance Companies Claims Dep't, 12 Vreeland Road PO Box 97, Florham Park, NJ 07932-0975,Re: Policy #8191-12-50/043 | $9,530 | $9,530 | pro rata |
| Global Credit Union, P.O. Box 3200, Spokane, WA 99220, Attn: Joyce Lockhard | $5,982.40 | $5,982.40 | pro rata |
| Royal Credit Union, P.O. Box 970, Eau Claire, WI 54702 | $7,000 | $7,000 | pro rata |
| TOTALS | $ 32,512.40 | $ 32,512.40 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

X The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

☐ the interest requirement is waived for   ☐ fine   ☐ restitution.

☐ the interest requirement for   ☐ fine   ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

74

Judgment — Page __6__ of __6__

DEFENDANT:        Eugene Okoh
CASE NUMBER:      06 CR 0009

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A**    X    Lump sum payment of $ __100__ due immediately, balance due

      ☐ not later than _____ , or
      X  in accordance with  ☐ C,  ☐ D,  ☐ E, or  X F below; or

**B**    ☐    Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
      term of supervision; or

**E**    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
      imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**    ☐    Special instructions regarding the payment of criminal monetary penalties:

      If the defendant is engaged in a BOP non-Unicor work program, he shall pay $25 per quarter toward the criminal financial
      penalties. However, if he participates in the BOP's Unicor program as a Grade 1 through 4, he shall pay 50% of his monthly
      Unicor earnings toward the criminal financial penalties, consistent with BOP regulations. The balance of the restitution shall be
      paid in monthly installments of 10% of gross monthly income over a period of supervision to commence 30 days after release
      from custody.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due
during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Joint and Several Amount, and
    corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

77



**United States Department of State**

*Washington, D.C.  20520*

JAN 1 2 2007

Mr. Eugene Okoh
210 Stagg Walk, 4B
Brooklyn, New York    11204

Dear Mr. Okoh:

This letter is to advise you that United States passport
number 216311494, issued to you in the name of Eugene Okoh
on February 8, 2006, at the National Passport Center is
revoked.

In accordance with the provisions of Section 51.72 in Title
22 United States Code of Federal Regulations, passport
number 216311494 and any other U.S. passport that might
have been issued to you is revoked and is no longer valid.
The provisions of Section 51.72 of Title 22 of the United
States Code of Federal regulations state in pertinent part:

    "51.72 Revocation of restriction of passports: A
passport may be revoked or restricted or limited where:…(b)
The passport has been obtained illegally, by fraud, or has
been fraudulently altered, or has been fraudulently
misused, or has been issued in error".

According to Department of State records, on February 2,
2006 you executed an application for a United States
passport before a Passport Agent at the United States Post
Office, FDR Station in New York, New York.  In support of
that application you submitted your foreign birth
certificate, your alien registration card showing that you
entered the U.S. on February 11, 2002, and your mother's
Certificate of Naturalization, which showed that she
acquired U.S. citizenship on August 26, 1996. Regrettably,
on that documentation you were issued passport number
216311494.

According to documents submitted to this office, during a
routine Bureau of Citizenship and Immigration Services
(BCIS) review of your file, it was determined that you did

**76**

not have a claim to U. S. citizenship since you were over the age of 18 when your mother, Igwilohi Obadan was naturalized as a United States citizen on August 26, 1996.

The documents you submitted do not support your claim to U.S. nationality.  Therefore, you are not entitled to a U.S. passport, in accordance with Section 212 of Title 22 of the United States Code, and Section 51.2(a) Title 22, United States Code of Federal Regulations, which provide that a U.S. passport may be issued only to a citizen or national of the United States.

In accordance with Sections 51.9 and 51.76 of Title 22 of the C.F.R, a U.S. passport remains the property of the United States Government and must be surrendered on demand. Therefore, you are requested to surrender passport number 216311494 and any other U.S. passport in your possession to the agent delivering this letter.  Any further use of a U.S. passport issued to you would constitute a felony violation of Section 1514 of Title 18 of the United States Code.

In accordance with Section 51.80(a)(1) of Title 22 of the C.F.R., you are not entitled to any administrative review of the decision.

Sincerely,

Gail Neelon, Director
Office of Legal Affairs
And Law Enforcement Liaison